DECISION
{¶ 1} In this original action, relator, Charles DeMooy, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying relator permanent total disability ("PTD") compensation and to enter an order granting said award. We deny the request for the following reasons.
 {¶ 2} Relator filed an application for PTD compensation on July 27, 2004 for five allowed claims, as follows:
02-3217803: sprain neck, sprain shoulder/arm nos, right shoulder; bilateral cuff tears.
80-4576: back, spondylolisthesis, lumbosacral fusion.
82-35877: strain right knee, arthritis right knee, internal derangement right knee.
99-437680: open wound right second finger.
99-570560: sprain sacroiliac, open wound left hand, contusion lumbar.
Relator also submitted a June 28, 2004 report by his physician, Kenneth W. Chapman, M.D., along with his claim. Dr. Chapman indicated that relator suffered a 13 percent whole person impairment as a result of his lumbar spine injury, a 15 percent whole person impairment as a result of his cervical spine injury, and a 72 percent whole person impairment as a result of his shoulder injuries, leaving relator with a 100 percent permanent impairment. Dr. Chapman concluded that, as a result of his injuries, relator suffered 100 percent permanent impairment and would not be able to return to his previous employment as a plumber.
 {¶ 3} At the request of the commission, Kirby Flanagan, M.D., examined relator and issued a report on November 23, 2004. Dr. Flanagan's report detailed relator's ranges of motion pertaining to each of the allowed claims. Dr. Flanagan assessed a 15 percent impairment for relator's right shoulder, 14 percent for his left shoulder, 26 percent for his right knee, and 25 percent for his lumbosacral condition. Ultimately, Dr. Flanagan assessed a 48 percent combined whole person impairment for all of relator's allowed conditions and noted that relator could perform sedentary work activity.
 {¶ 4} Thomas F. Nimberger, C.R.C., submitted a vocational evaluation on January 17, 2005. Nimberger noted that relator had a high school degree and was able to read, write, and do basic math. Relator had been employed as a plumber for 35 years. Based upon his employment history, Nimberger opined that relator did not have transferable skills for light or sedentary work. However, based upon his education, Nimberger noted that relator could develop the necessary skills to perform light or sedentary work. Nimberger also noted that relator was 60 years old, but indicated that age was not determinative of function in this case. Based upon his review of the relevant vocational factors and Dr. Chapman's physical examination report, Nimberger opined that relator was capable of sustained remunerative employment.
 {¶ 5} Relator's application for PTD compensation was heard by a staff hearing officer ("SHO") on February 17, 2005. The SHO relied upon the reports submitted by Dr. Flanagan and Nimberger and issued an order finding that, although relator was unable to return to his former employment, he was capable of performing sedentary, sustained remunerative employment. Relator's motion for reconsideration was denied April 2, 2005.
 {¶ 6} Relator filed a mandamus action with this court and raised the following arguments:
1. Dr. Flanagan's opinion does not constitute valid evidence.
2. Dr. Nimberger's report does not constitute valid evidence.
3. The commission's explanation denying PTD compensation was inadequate and in violation of State ex rel. Noll v. Indus.Comm. (1991), 57 Ohio St.3d 203.
4. The evidence indicates that relator is entitled to PTD compensation.
Pursuant to Civ.R. 53(C) and Loc.R. 12(M), this matter was referred to a magistrate of this court.
 {¶ 7} The magistrate rendered her decision on January 27, 2006, including findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate found that Dr. Flanagan's report constituted valid evidence because he specifically addressed his physical findings pertaining to each allowed condition. The magistrate held that, even though Nimberger did not rely upon Dr. Flanagan's report and did not specifically list each allowed condition, these omissions were not fatal because Nimberger correctly considered the relevant vocational factors. The magistrate concluded that the commission's explanation for denying compensation, although brief, complied with the requirements of Ohio Adm. Code 4121-3-34, and State ex rel. Noll v. Indus. Comm. (1991),57 Ohio St.3d 203. Accordingly, the magistrate recommended that this court deny relator's request for a writ of mandamus.
 {¶ 8} Relator filed his objections to the magistrate's decision on February 10, 2006, asserting the same four objections as those briefed and submitted to the magistrate. Additionally, relator contended that the magistrate erred finding Nimberger's report constituted valid evidence even though Nimberger did not consider relator's age to be a factor determinative of function in this case.[1] The magistrate effectively addressed each of these objections in her decision. For the reasons already set forth in the magistrate's decision, we find that relator's arguments lack merit and decline further review.
 {¶ 9} Pursuant to Civ.R. 53(E)(4), we have conducted a full review of the magistrate's decision, relator's objections and all submitted memoranda. For the reasons stated, relator's objections are overruled and we adopt the magistrate's decision. We deny relator's request for a writ of mandamus.
Objections overruled; writ of mandamus denied.
Klatt, P.J., and Brown, J., concur.
 (APPENDIX A) IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. Charles H. DeMooy, :
Relator, :
v. : No. 05AP-814
The Industrial Commission of Ohio, : Neptune Plumbing Heating Co. and Exelon Services Inc., :
Respondents. :
 MAGISTRATE'S DECISION Rendered on January 27, 2006 Stewart Jaffy Associates Co., LPA, Stewart R. Jaffy andMarc J. Jaffy; Deegan McGarry, and F. Timothy Deegan, for relator.
Jim Petro, Attorney General, and Douglas R. Unver, for respondent Industrial Commission of Ohio.
Ross, Brittain Schonberg Co., LPA, Thomas R. Wyatt andAnthony A. Baucco, for respondent Exelon Services, Inc.
 IN MANDAMUS {¶ 10} Relator, Charles DeMooy, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied relator's application for permanent total disability ("PTD") compensation and ordering the commission to find that he is entitled to that compensation.
Findings of Fact:
 {¶ 11} 1. Relator has sustained five work-related injuries during the course of his employment as a plumber. Relator's claims have been allowed as follows:
02-3217803: sprain neck, sprain shoulder/arm nos, right shoulder; bilateral cuff tears.
80-4576: back, spondylolisthesis, lumbosacral fusion.
82-35877: strain right knee, arthritis right knee, internal derangement right knee.
99-437680: open wound right second finger.
99-570560: sprain sacroiliac, open wound left hand, contusion lumbar.
Relator has undergone nine surgeries for his allowed conditions: three surgeries for his shoulders; four surgeries for his back; and two surgeries for his knee.
 {¶ 12} 2. On July 27, 2004, relator filed an application for PTD compensation. Relator's application was supported by the June 28, 2004 report of his treating physician Kenneth W. Chapman, M.D., as well as the office notes from his office visits with Dr. Chapman. In his June 28, 2004 report, Dr. Chapman chronicled his treatment of relator; assessed a 13 percent whole person impairment relative to relator's lumbar spine condition; a 15 percent whole person impairment relative to relator's cervical spine condition; and a 72 percent whole person impairment relative to relator's shoulder problems. As such, Dr. Chapman opined that relator had a 100 percent permanent impairment. In conclusion, Dr. Chapman stated as follows:
This injured worker has worked very hard over the years, has done strenuous type of work, all which has resulted in his multiple complaints of lumbar spine disease, cervical spine disease and bilateral torn rotator cuffs. Any person with one of these problems would still be very disabled from doing the type of work that Mr. DeMooy has done over the years. He is not able to lift, he is not able to work overhead, he is not able to carry heavy things that is required of him as a plumber.
I feel there is no reasonable conclusion for Mr. DeMooy's condition other than to allow him a 100% permanent disability secondary to his work injuries in 1980 and 2002.
 {¶ 13} 3. Relator was examined by Kirby Flanagan, M.D., who issued a report dated November 23, 2004. On physical examination, Dr. Flanagan made certain findings. Specifically, relative to relator's cervical spine conditions, Dr. Flanagan noted mild generalized tenderness, mild to moderate restriction of range of motion with flexion of 60 degrees and extension of 35 degrees. Lateral bending right and left of 25 degrees, while rotation right and left of 40 degrees. Relative to relator's right shoulder condition, Dr. Flanagan noted flexion of 85 degrees, extension of 40 degrees, abduction of 80 degrees, adduction of 50 degrees, external rotation of 70 degrees and internal rotation of 40 degrees. Relative to relator's left shoulder condition, Dr. Flanagan noted flexion of 95 degrees, extension of 35 degrees, abduction of 85 degrees, adduction of 50 degrees, external rotation of 80 degrees, and internal rotation of 30 degrees. Relative to relator's right knee, Dr. Flanagan noted flexion of 110 degrees and extension of — 15 degrees. Dr. Flanagan noted gross bony deformity consistent with moderately severe degenerative joint disease, no edema or effusion. Relative to relator's lumbar spine condition, Dr. Flanagan noted flexion of 20 degrees, extension of 0 degrees, lateral bending right and left of 10 degrees, rotation right of 10 degrees and left of 5 degrees, deep tendon reflexes are 2/4 on the right and 2+4 on the left. Supine straight leg raising was limited to 60 degrees on the right and 40 degrees on the left. Dr. Flanagan noted that relator limps because of knee pain, that toe walking causes limping in the right lower extremity and that heel walking is accomplished awkwardly but symmetrically. Ultimately, Dr. Flanagan assessed a 15 percent whole person impairment for the right shoulder, a 14 percent whole person impairment for the left shoulder, a 26 percent impairment for the right knee, and a 25 percent whole person impairment for his lumbosacral condition. Combining those, Dr. Flanagan opined that relator had a 48 percent whole person impairment for all the allowed conditions. Thereafter, Dr. Flanagan completed a physical strength rating form indicating that relator was capable of sedentary work activity.
 {¶ 14} 4. A vocational evaluation was prepared by Thomas F. Nimberger, C.R.C., dated January 17, 2005. Mr. Nimberger indicated that, at age 60, relator is closely approaching advanced age. However, Mr. Nimberger indicated that he does not view relator's age to be a valid determining factor relative to function. Mr. Nimberger noted that relator graduated from high school and reported being able to read, write, and perform basic math. Mr. Nimberger concluded that these factors present a positive educational profile regarding future employability. Mr. Nimberger listed relator's adjusted worker trait profiles as follows: reasoning, ninth to twelfth grade level; math and language, seventh to eighth grade level. Mr. Nimberger noted that relator had been employed as a plumber for 35 years and noted that relator would not have any skills that would transfer to sedentary or light duty work. However, Mr. Nimberger stated that relator would be able to reasonably develop academic or other skills required to perform entry-level, sedentary or light duty work as well as engage in short term training based upon relator's history.
 {¶ 15} 5. Relator's application was heard before a staff hearing officer ("SHO") on February 17, 2005, and resulted in an order denying that application. The SHO relied upon the medical report of Dr. Flanagan and concluded that relator could perform sedentary work. The SHO also relied upon the vocational assessment prepared by Mr. Nimberger and ultimately concluded as follows:
A Vocational Assessment report was prepared on 11/17/2005, by Thomas Nimberger, C.R.C. He opined that, the claimant's age was "not reviewed to be a valid determining factor for function." Mr. Nimberger further opined that, Mr. DeMooy's educational profile was a positive one, with regard to its impact on his employability. Mr. Nimberger, likewise, found that, it was not clear whether or not Dr. Chapman was trying to opine that, Mr. DeMooy was unable to work in any job whatsoever.
In conclusion, the Staff Hearing Officer finds that, the claimant is not capable of returning to his former position of employment. However, the Staff Hearing Officer finds that, the claimant is capable of pursuing sedentary, sustained remunerative employment, despite the injuries sustained in all of his claims. Therefore, the Staff Hearing Officer finds that the claimant is not permanently and totally disabled.
 {¶ 16} 6. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law:
 {¶ 17} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show that he has a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm. (1967),11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986),26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State exrel. Lewis v. Diamond Foundry Co. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981),68 Ohio St.2d 165.
 {¶ 18} The relevant inquiry in a determination of permanent total disability is the claimant's ability to do any sustained remunerative employment. State ex rel. Domjancic v. Indus.Comm. (1994), 69 Ohio St.3d 693. Generally, in making this determination, the commission must consider not only medical impairments, but also the claimant's age, education, work record and other relevant nonmedical factors. State ex rel. Stephensonv. Indus. Comm. (1987), 31 Ohio St.3d 167. Thus, a claimant's medical capacity to work is not dispositive if the claimant's nonmedical factors foreclose employability. State ex rel. Gay v.Mihm (1994), 68 Ohio St.3d 315. The commission must also specify in its order what evidence has been relied upon and briefly explain the reasoning for its decision. State ex rel. Noll v.Indus. Comm. (1991), 57 Ohio St.3d 203.
 {¶ 19} Relator raises four arguments: (1) Dr. Flanagan's opinion does not constitute valid evidence; (2) Dr. Nimberger's report does not constitute valid evidence; (3) the commission's explanation denying PTD compensation was inadequate and in violation of Noll; and (4) the evidence indicates that relator is entitled to PTD compensation. For the reasons that follow, this magistrate disagrees and denies relator's request for a writ of mandamus.
 {¶ 20} First, relator contends that the report of Dr. Flanagan does not constitute valid evidence. Relator argues that Dr. Flanagan did not specifically discuss relator's physical limitations or restrictions. Because Dr. Flanagan simply gave impairment ratings and then noted that relator could perform sedentary work, relator contends that the commission abused its discretion by relying upon it.
 {¶ 21} In support of relator's argument, relator cites two decisions from this court: State ex rel. Owens-Corning FiberglasCorp. v. Indus. Comm., Franklin App. No. 03AP-684,2004-Ohio-3841; and State ex rel. Howard v. Millennium InorganicChemicals, Franklin App. No. 03AP-637, 2004-Ohio-6603. Relator cites a quote that appears in both of the above two decisions wherein the magistrate in Ownes-Corning noted:
* * * [T]he commission cannot simply rely on a physician's "bottom line" identification of an exertional category but must base its decision on the specific restrictions imposed by the physician in the body of the report. * * *
Id. at ¶ 56.
 {¶ 22} However, this magistrate finds that the problem being addressed in those cases in not present in this case.
 {¶ 23} The situation addressed by this court in bothOwens-Corning and Howard, was that the doctors were indicating that the injured workers could perform at a certain strength level and yet, when the narrative portion of the doctors' reports were read, the doctors had placed greater restrictions on the injured workers which would actually render them incapable of performing the strength level work which the doctor had indicated they could perform on the strength rating form. This court noted that the commission cannot simply rely upon a box checked by a physician indicating that an injured worker can perform at a certain strength level. Instead, the commission needs to review the narrative portion of the doctor's report and actually make sure that any physical restrictions the doctor listed within the narrative portion of the report correspond with an ability to actually perform at the exertional level which the doctor noted on a separate form.
 {¶ 24} In the present case, there is no such problem. While it is true that Dr. Flanagan did not place specific restrictions on relator relative to his allowed conditions in the narrative portion of his report, he did specifically note his physical findings with regard to each of the allowed conditions. He noted his range of motion findings for relator's shoulders, back, cervical spine, and knee. Thereafter, after reading the definition of sedentary work on the separate form, Dr. Flanagan opined that relator was capable of performing sedentary work activity as defined in the Ohio Administrative Code. The narrative portion of Dr. Flanagan's report and the physical exertional level form are not internally inconsistent. Dr. Flanagan opined that relator could perform some sedentary work and the commission did not abuse its discretion by relying upon his report.
 {¶ 25} Relator also contends that the vocational report of Mr. Nimberger does not constitute valid evidence upon which the commission could rely. First, relator points out that Mr. Nimberger did not read and consider the report of Dr. Flanagan in reaching his opinion. However, the magistrate finds that this is not fatal inasmuch as Mr. Nimberger's report was limited to his assessment of relator's nonmedical disability factors. Mr. Nimberger had a report completed by Dr. Martin upon which the commission did not rely. Dr. Martin had indicated that relator was capable of performing at a sedentary work level, just as Dr. Flanagan had indicated. Thereafter, Mr. Nimberger considered the vocational factors and concluded that, in his opinion, relator could perform some sustained remunerative employment of a sedentary nature. As such, the magistrate finds that the fact that Mr. Nimberger did not consider Dr. Flanagan's medical report is not a reason to remove his vocational report from evidence.
 {¶ 26} Second, relator contends that Mr. Nimberger did not consider the effect of relator's injury to his shoulders and neck. Upon review, the magistrate notes that Mr. Nimberger did list relator's 2002 claim at the beginning of his report, but did not mention the allowed conditions for that claim in the body of his report. However, as stated previously, Mr. Nimberger's vocational report was confined to a discussion of the nonmedical vocational factors. Those findings would be relevant no matter what injuries relator had. It is incumbent upon the commission to determine whether relator could perform work at a certain strength level and then to consider the vocational evidence and determine whether or not there were any jobs which relator could perform in that strength level. As such, the magistrate finds that the fact that the vocational evaluator did not specifically list all the allowed conditions is not fatal to his report.
 {¶ 27} Furthermore, the magistrate notes that Mr. Nimberger did specifically note that relator was restricted to no lifting, no overhead work, and no carrying of heavy items, pursuant to Dr. Chapman's report. Specifically, Mr. Nimberger indicated that Dr. Chapman's limitations would definitely prevent relator from returning to his former job as a plumber; however, he also opined that those restrictions would not prevent relator from returning to other work within the functional restrictions imposed by Dr. Chapman. As such, inasmuch as Dr. Chapman had considered relator's shoulder and cervical spine injuries in his report, the magistrate concludes that, without listing those allowed conditions in the body of the report, it is apparent that Mr. Nimberger did consider restrictions to those parts of the body and relator's argument is not well-taken.
 {¶ 28} Relator also argues that the commission's analysis was inadequate and that this court should award relator PTD compensation. For the reasons that follow, this magistrate disagrees.
 {¶ 29} Relator argues that the commission's consideration of the vocational factors does not comply with the requirements of Ohio Adm. Code 4121-3-34 and Noll. Relator is correct when he claims that the commission did not provide a lengthy and detailed explanation for why PTD compensation was being denied. However, neither Ohio Adm. Code 4121-3-34 nor Noll necessarily require a lengthy and detailed explanation. Instead, the commission is required to cite the evidence upon which it relied and give a brief explanation of the commission's reasoning for that decision. In the present case, the commission indicated that it was relying upon the report of Dr. Flanagan for the conclusion that relator was capable of performing at a sedentary work level. The commission also indicated that it was relying upon the vocational report of Mr. Nimberger and that the commission agreed with Mr. Nimberger's explanation and conclusions. Mr. Nimberger considered and discussed relator's nonmedical vocational factors at some length. This court has held that where a vocational report extensively discusses and analyzes the relevant nonmedical factors, the commission does not need to repeat that analysis in its order when it adopts the findings of the vocational evaluator. State ex rel. Hunt v. Indus. Comm. (Sept. 28, 1995), Franklin App. No. 94APD11-1659 (Memorandum Decision); and Stateex rel. Freeman v. Indus. Comm. (Mar. 17, 1998), Franklin App. No. 97APD02-251 (Memorandum Decision). Here, the commission adopted the findings of Mr. Nimberger. As such, the magistrate finds that the commission's analysis is adequate to meet the requirements of the law. While it would be desirable for the commission to have issued a better order with some more detail, this magistrate finds that the commission's order meets the bear minimum requirements of Noll.
 {¶ 30} Because the magistrate finds that the commission properly relied upon the reports of Dr. Flanagan and the vocational report of Mr. Nimberger and because the magistrate finds that the commission's analysis was adequate and met the requirements of the law, the magistrate finds that relator's request that this court grant him PTD compensation lacks merit.
 {¶ 31} Based on the foregoing, it is this magistrate's conclusion that relator has not demonstrated that the commission abused its discretion in denying his application for PTD compensation and this court should deny relator's request for a writ of mandamus.
[1] In State ex rel. Singleton v. Indus. Comm. (1994),71 Ohio St.3d 117, the Supreme Court of Ohio noted that age is not necessarily a deterrent if other vocational factors, such as education and skills, indicate that relator possesses the ability to be retrained.