DECISION
{¶ 1} Relator, Ralph Yakimoff, filed this original action requesting that this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order, which denied relator's application for permanent *Page 2 
total disability compensation, and ordering the commission to find that he is entitled to that compensation.
 {¶ 2} The court referred this matter to a magistrate pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision, including findings of fact and conclusions of law, recommending that this court deny the requested writ. (Attached as Appendix A.) No objections to that decision have been filed.
 {¶ 3} Finding no error of law or other defect on the face of the magistrate's decision, this court adopts the magistrate's decision as our own, including the findings of fact and conclusions of law contained in it. In accordance with the magistrate's decision, the requested writ is denied.
Writ of mandamus denied.
 BROWN and TYACK, JJ., concur. *Page 3 
 APPENDIX A MAGISTRATE'S DECISION Rendered on December 19, 2006 {¶ 4} Relator, Ralph Yakimoff, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied relator's application for permanent total *Page 4 
disability ("PTD") compensation and ordering the commission to find that he is entitled to that compensation. Findings of Fact:
 {¶ 5} 1. Relator has worked as a millwright for various steel companies his entire life. During the course of his employment, relator has sustained three work-related injuries and his claims have been allowed as follows:
 * * * L270887-22 * * * PARTIAL AMPUTATION LEFT INDEX FINGER TIP; LEFT CARPAL TUNNEL SYNDROME.
 * * * 983957-22: LUMBAR STRAIN AND STRAIN RIGHT SHOULDER.
 * * * L208970-22: RIGHT KNEE STRAIN; RIGHT KNEE TORN CARTILAGE; RIGHT KNEE TORN MENISCUS; CONTUSION LEFT SHOULDER; ABRASION LEFT LOWER ARM; TEAR ROTATOR CUFF LEFT SHOULDER.
 {¶ 6} 2. Following the 1990 injury involving relator's right knee and left shoulder, relator was eventually able to return to restricted work as a millwright expediter doing paperwork, ordering parts, assessing jobs, operating cranes and toe motors and doing light lifting. With the exception of time off following the injury to his finger and surgery for his right knee, relator continued to work in this capacity until he was laid off in September 1998. Relator has not worked since then.
 {¶ 7} 3. Relator filed his application for PTD compensation on March 13, 2003. Relator filed the May 8, 2002 report of John J. Vargo, D.O., who assessed a 42 percent whole person impairment for all of relator's allowed conditions and indicated that relator's impairment was both above and below the waist; that he cannot bend, reach over shoulder height, push, pull, or lift more than five pounds; should avoid working on *Page 5 
un-level surfaces; cannot climb or be around moving equipment; and should stay away from unprotected heights. Ultimately, Dr. Vargo concluded that relator was totally and permanently disabled from pursuing remunerative employment.
 {¶ 8} 4. Relator was examined by Kevin L. Trangle, M.D., who issued a report dated August 5, 2005. Dr. Trangle reviewed relator's medical evidence, provided his findings upon examination, and concluded as follows:
 The patient left work in 1998, not due to his inability to work at that point in time, but rather due to a restructuring at WCI and a lay off. In my opinion, he certainly could have continued to do his usual job and his usual activities as an expediter. He may not have been able to do all the jobs as a millwright even at that point in time which would require, at times, climbing up ladders and having the ability to work above the horizontal level including lifting himself. However, there are several other jobs he could have done including the expediter job and he still could to based upon the allowed claim. As such, in my opinion, this individual is capable of sustaining remunerative employment and is not permanently totally disabled.
 {¶ 9} 5. Relator was also examined by John L. Dunne, D.O., who issued a report dated August 24, 2005. After providing his findings, Dr. Dunne assessed a 30 percent whole person impairment and concluded as follows:
 It is also my opinion that Mr. Yakimoff is capable of physical work activity at a light work degree defined as jobs requiring sitting most of the time but pushing or pulling with arm or leg controls or occasional walking. Mr. Yakimoff does have permanent restrictions from lifting, pushing or pulling and reaching above chest height. He would have permanent restrictions against climbing, prolonged standing, stooping or lifting, those conditions that he was working under at the time that he was let go from his last employer. Those circumstances really have not changed relative to the claim allowances. * * * *Page 6 
 {¶ 10} 6. A vocational report was prepared by Denise O'Conner, MA, CRC, dated October 20, 2005. Ms. O'Conner noted that relator was currently 64 years of age; however, she also noted that there is no direct correlation between age and employability and that many older adults are working beyond the traditional retirement age. Ms. O'Conner noted that relator had graduated from high school and indicated that he had participated in a college curriculum. Ms. O'Conner opined that this would permit relator to perform semi-skilled to skilled work. With regard to his work history, Ms. O'Conner noted that he essentially performed the same work his entire working life and noted that relator was laid off from his work as a millwright expediter in 1998 but that it was not his allowed conditions which had forced him from the workplace. Ms. O'Conner performed a transferable skills analysis and identified the following transferable skills:
 Ability to drive
 Directing, controlling and planning
 Permorming [sic] repetitive work
 Performing a variety of duties
 Attaining precise limits
 Making judgments and decisions
 Attaining precise limits/tolerances
 Dealing with people
 {¶ 11} Ms. O'Conner also identified eight potential positions which were currently available in the Youngstown, Ohio, area:
 Retail Sales Associate
 Security
 Security Officers
 Security Porter
 Telemarketer
 Order Entry Purchasing
 Assistant in Dr. Office will train
 File Clerk *Page 7 
 {¶ 12} Ultimately, Ms. O'Conner concluded as follows:
 This specialist's analysis of the claimant's transferable skills indicate that the claimant has direct transferable skills in the Sedentary to Light work capacity.
 The majority of medical information in the file indicates that the claimant, Mr. Yakimoff, is capable of sustained ruminative employment in the light to sedentary range for worker strength based on the allowed conditions in his claim.
 When considering opportunities to access the job market, the claimant may want to take advantage of job seeking skills training and assisted job placement program. Furthermore, he may want to consider a short-term computer and keyboarding training classes to increase his employability. These programs and services can be accessed though [sic] local non-profit agencies at the state and county levels.
 Based on the information available to this specialist, and considering the allowed conditions of the claims, it is this specialist's opinion, based on the claimant's education, physical abilities, skills, age and prior work experience, that the claimant is capable of sustained remunerative employment.
 {¶ 13} 7. A second vocational evaluation was performed by Barbara E. Burk, CRC, LPC, dated October 21, 2005. Ms. Burk opined that relator's age would be a significant employment barrier, that his academic level was a vocational asset, but ultimately concluded that relator's employment profile indicated that he would have difficulty adjusting to different occupations, new work environments, and corporate cultures. Ms. Burk opined that it was highly probable that relator lacked knowledge of the world of work, the demands of specific jobs, job search knowledge, and job interviewing skills. Ms. Burk also concluded that relator did not have any skills which would transfer to sedentary or light work and opined that relator was no longer a candidate for sustained remunerative employment activity. *Page 8 
 {¶ 14} 8. Relator's PTD application was heard before a staff hearing officer ("SHO") on December 8, 2005. The SHO relied upon the medical reports of Drs. Dunne and Trangle and concluded that, from a physical standpoint, relator was capable of performing sedentary to light-duty work. In addressing the nonmedical disability factors, the SHO relied upon the vocational report of Ms. O'Conner. Relative to relator's age, the SHO noted that relator testified that he had always intended to work until age 70 before he retired. Based upon that statement and Ms. O'Conner's conclusion that there is no direct correlation between age and employability, the SHO stated that there is "no persuasive evidence indicating the * * * injured worker's age has a negative impact upon the ability to adapt to a new work situation or to do work in competition with others." With regards to relator's education, the SHO agreed with Ms. O'Conner's conclusion that relator's educational level was a positive vocational/employment factor. In considering relator's work history, the SHO agreed with Ms. O'Conner's conclusions that relator did have skills which would transfer to both the light and sedentary work levels and further noted that relator had been able to physically perform the duties of the millwright expediter position until he was laid off. At the hearing, relator testified that the millwright expediter position was not a special job created by the employer just for him, but, that, it was a job which had existed and had been held by others before him. As such, the SHO found relator's work history to also be a positive factor. In conclusion, the SHO determined that relator has the ability to do, or to be trained to do, entry level work at the sedentary and light-duty work levels and denied his application for PTD compensation. *Page 9 
 {¶ 15} 9. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law: {¶ 16} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm.
(1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond FoundryCo. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981),68 Ohio St.2d 165.
 {¶ 17} The relevant inquiry in a determination of permanent total disability is the claimant's ability to do any sustained remunerative employment. State ex rel. Domjancic v. Indus. Comm. (1994),69 Ohio St.3d 693. Generally, in making this determination, the commission must consider not only medical impairments, but also the claimant's age, education, work record and other relevant nonmedical factors. State exrel. Stephenson v. Indus. Comm. (1987), 31 Ohio St.3d 167. Thus, a claimant's medical capacity to work is not dispositive if the claimant's nonmedical factors foreclose employability. State ex rel. Gay v.Mihm (1994), 68 Ohio St.3d 315. The commission *Page 10 
must also specify in its order what evidence has been relied upon and briefly explain the reasoning for its decision. State ex rel. Noll v.Indus. Comm. (1991), 57 Ohio St.3d 203.
 {¶ 18} Relator makes two arguments in the present case. First, relator contends that the commission's order fails to comply with the requirements of Noll. Specifically, relator contends that the commission "did nothing more than simply offer boilerplate language in support of its conclusion" that relator is not entitled to PTD compensation. (Relator's brief, at 9.) Relator contends the commission merely repeated the findings of Drs. Dunne and Trangle and failed to explain why it relied on those findings and that the commission failed to acknowledge the opinion of Dr. Vargo. With regard to the nonmedical factors, relator asserts that the commission relied upon boilerplate language here as well, and argues that the cases of State ex rel. Pierce v. Indus.Comm. (1997), 77 Ohio St.3d 275, and State ex rel. LeVan v. Young'sShell Serv. (1997), 80 Ohio St.3d 55, substantiate his claim that the commission's order violates Noll. In his second argument, relator contends that the medical evidence and vocational evidence entitle him to PTD compensation. For the reasons that follow, relator's arguments are rejected.
 {¶ 19} First, the commission is not required to explain why it accepts certain evidence as persuasive, nor is the commission required to explain why it finds certain other evidence not persuasive. The commission is only required to cite the evidence upon which it relies and give a brief explanation for its decision. As such, contrary to relator's arguments, the commission was not obligated to explain why it found the medical reports of Drs. Dunne and Trangle persuasive and the commission was likewise not required to acknowledge the report of Dr. Vargo. *Page 11 
 {¶ 20} Second, the commission did not simply offer boilerplate language in support of its conclusion that relator was capable of performing at a sedentary to light-duty work level. In their reports, Drs. Dunne and Trangle noted their physical findings upon examination and gave their respective opinions concerning the exertional level at which relator would be able to perform. The SHO set out the conclusions of both doctors and then specifically noted the physical levels of exertion required in order for a person to perform both sedentary and light-duty work. Based upon the findings of Drs. Dunne and Trangle, the SHO then concluded that relator could perform at a sedentary light-duty work level. The commission did exactly what it is required to do: the commission identified the medical evidence upon which it relied and provided a brief explanation regarding its conclusion that relator had the ability to perform at a sedentary light-duty work level. In this regard, the commission did all that it was required to do and relator has not demonstrated that the commission abused its discretion.
 {¶ 21} Relator further contends that the commission's analysis of the nonmedical factors violates Noll. Specifically, relator points to thePierce and LeVan cases. In Pierce, the commission denied the claimant PTD compensation and gave the following analysis of theStephenson factors:
 "Claimant is 62 years old, has a 10th grade education, and a work history as a foreman ironworker, and journeyman ironworker. * * * Based on the claimant's conservative treatment history, his ability to continue working for over 6 years after the date of injury, the conclusion of Dr. McCloud that the claimant has a minimal impairment of 30% with no neurological or radicular changes, and considering his past work history which includes supervisory experience, it is found that the claimant does possess skills which would transfer to similar or lighter duty employment, and that he should be able to obtain such employment, especially *Page 12 
following participation in a reconditioning or work hardening program. Therefore, it is found that the claimant is not permanently precluded from returning to any type of sustained, remuenative [sic] employment."
Id. at 276-277.
 {¶ 22} The court concluded that the commission's order violatedNoll because it failed to explain how claimant's nonmedical factors combined to make him work amenable. The court found that the commission's mere acknowledgement of claimant's age and education was not enough. The court also found that the commission's discussion of claimant's work history was inadequate because the commission noted that claimant had transferable skills but failed to identify any.
 {¶ 23} In LeVan, the commission had provided the following discussion of the claimant's nonmedical disability factors:
 "Although his sixth grade education limits him to non-intellectual work, his youth (age 43) leaves claimant with over 20 productive work years in the labor force, while his wide and varied unskilled, semi-skilled, and skilled work history as a laborer, cab driver, trash collector, service station attendant, painter and mechanic all indicate a flexibility and adaptability to various kinds of work environments that would be assets in performing sedentary to light work for which he retains the physical capacity. Accordingly, claimant is held not to be permanently and totally disabled."
Id. at 56.
 {¶ 24} On review, the court found the explanation violatedNoll. First, the court found that the commission's treatment of claimant's work history was little more than a recitation of his past jobs and that the commission's attempt to add a substantive diminution by use of the phrases "wide and varied" and "flexibility and adaptability" *Page 13 
failed. The court stated that those phrases do not explain how the claimant's occupational history enhances his re-employment potential. Further, the court noted that the cornerstone of the commission's order was the future and the many years of participation in the workforce available to someone his age. The court criticized the commission for failing to address whether claimant is, or could be, vocationally capable of taking advantage of such. The court also noted that the order failed to mention anything about claimant's ability to retrain or rehabilitate.
 {¶ 25} The magistrate finds that the issues addressed by the court in both Pierce and LeV an are not present here. First, this court has held on several occasions that, where vocational reports extensively discuss and analyze all of the relevant nonmedical factors, the commission is not required to repeat the entire analysis in its order. State ex rel.Hunt v. Indus. Comm. (1995), Franklin App. No. 94APD11-1659 (Memorandum Decision), State ex rel. Freeman v. Indus. Comm. (1998), Franklin App. No. 97APD02-251 (Memorandum Decision), and State ex rel. DeMooy v.Indus. Comm., Franklin App. No. 05AP-814, 2006-Ohio-3708.
 {¶ 26} In the present case, the commission specifically relied upon the vocational report of Ms. O'Conner. As noted in the findings of fact, Ms. O'Conner found that relator's age would not necessarily be a barrier, that his educational level was a favorable factor indicating that he could perform semi-skilled to skilled work, and that his work history was positive both because the job he was performing when he was laid off is a job available currently and because relator had transferable skills. Ms. O'Conner specifically identified those transferable skills and also listed several jobs which were currently available in the Youngstown, Ohio, area which relator would be qualified to *Page 14 
perform. Because Ms. O'Conner's report was substantially detailed, the commission did not need to repeat all of her findings. However, a review of the commission's order demonstrates that the commission did specifically address each of the nonmedical disability factors. In finding that relator's age was, at worst, a neutral factor, the commission pointed out that relator had always intended to work until at least age 70, that when he last worked in 1998, he left the workforce because of a layoff and not because of his allowed conditions, and because the SHO agreed with Ms. O'Conner's statement that there is no direct correlation between age and employability. The commission found relator's high school education to be a positive factor and, in combination with his prior work history, the commission noted that relator had performed skilled and semi-skilled jobs and noted that Ms. O'Conner specifically identified several transferable skills which relator had developed. As such, although relator contends that all of the vocational evidence was negative, the commission actually concluded that his age was a neutral factor, and that his educational work history were both positive factors and gave an explanation as to how those factors combined to render relator capable of performing some sustained remunerative employment. This commission order simply does not violateNoll.
 {¶ 27} Further, the magistrate rejects relator's assessment that the evidence clearly supports a finding that he is permanently and totally disabled. Based upon the medical reports of Drs. Dunne and Trangle, which constitute some evidence upon which the commission could properly rely, relator is capable of performing at a sedentary light-duty work level. Furthermore, based upon the vocational report of Ms. O'Conner and the commission's own analysis, relator's nonmedical disability factors are mostly *Page 15 
positive, he has transferable skills, and the job which he was performing when he was laid off would still be available in the industry.
 {¶ 28} Based on the foregoing, it is this magistrate's conclusion that relator has not demonstrated that the commission abused its discretion in denying his application for PTD compensation and relator's request for a writ of mandamus should be denied. *Page 1