[Cite as *State ex rel. Kidd v. Indus. Comm.*, 2022-Ohio-450.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Donna J. Kidd, | : | |
| Relator, | : | |
| v. | : | No. 20AP-364 |
| Industrial Commission of Ohio et al., | : | (REGULAR CALENDAR) |
| Respondents. | : | |

D E C I S I O N

Rendered on February 15, 2022

**On brief:** *Schaffer and Associates, L.P.A.,* and *Thomas J. Schaffer,* for relator.

**On brief:** *Dave Yost,* Attorney General, and *Anna Isupova,* for respondent Industrial Commission of Ohio.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

LUPER SCHUSTER, P.J.

{¶ 1} Relator, Donna J. Kidd, initiated this original action requesting this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order denying her application for permanent total disability ("PTD") compensation, and to enter a new order, either granting or denying the application, that complies with *State ex rel. Libecap v. Indus. Comm.*, 10th Dist. No. 96APD01-29, 1996 Ohio App. LEXIS 3892 (Sept. 5, 1996), *aff'd without opinion*, 83 Ohio St.3d 178 (1998).

{¶ 2} This matter was referred to a magistrate of this court pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals. The magistrate issued the appended decision, including findings of fact and conclusions of law. The magistrate determined that the commission did not abuse its discretion because its order denying

Kidd's PTD compensation application is supported by some evidence. Thus, the magistrate recommends this court deny Kidd's request for a writ of mandamus. Kidd has filed objections to the magistrate's decision. First, she argues that the magistrate improperly concluded the commission's denial of Kidd's PTD compensation application is supported by some evidence. Second, she argues the magistrate failed to adequately recite Dr. Sanjay Shah's finding that Kidd be "[a]llow[ed] rest periods every 15-20 minutes for 1-2 minutes as needed during standing, sitting, or walking." (Oct. 28, 2021 Objs. to Mag.'s Decision at 6.)

{¶ 3} For this court to issue the requested writ of mandamus, Kidd must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967). A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986). But when the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56 (1987). The commission "has substantial leeway in both interpreting and drawing inferences from the evidence before it." *State ex rel. Lawson v. Mondie Forge*, 104 Ohio St.3d 39, 2004-Ohio-6086, ¶ 34. Thus, we must not "second-guess the commission's evaluation of the evidence." *State ex rel. Black v. Indus. Comm.*, 137 Ohio St.3d 75, 2013-Ohio-4550, ¶ 22. The relevant inquiry in a PTD compensation determination is the claimant's ability to do any sustained remunerative employment. *State ex rel. Domjancic v. Indus. Comm.*, 69 Ohio St.3d 693, 695 (1994); Ohio Adm.Code 4121-3-34(B)(1).

{¶ 4} Here, Kidd submitted her PTD compensation application with a report completed by Mickey E. Frame, D.C., who opined that Kidd is unable to work due to her allowed conditions. On her application form, Kidd indicated that she was limited to driving for one hour at a time, sitting for 30 minutes at a time, standing for 30 minutes at a time, and walking for approximately one-half mile at a time. At the commission's request, Dr. Shah performed an independent medical examination of Kidd. In his report, Dr. Shah opined that Kidd could work at a sedentary level, but he noted, inter alia, the following limitations: "standing for approximately 20 minutes, sitting for 20-30 minutes with change

in position and is able to walk 1/2 mile. * * * Allow rest periods every 15-20 minutes for 1-2 minutes as needed during standing, sitting, or walking." (Specialist Report at 4-5, Stip. of Evidence at 20986-Y61 & Y62.) Dr. Shah further noted that Kidd reported that she uses a treadmill for approximately 30 minutes four times per week. A vocational specialist, Anne Savage Veh, evaluated Kidd and opined that she is no longer capable of engaging in sustained, remunerative employment.

{¶ 5} A commission staff hearing officer ("SHO") determined that Dr. Shah's findings and restrictions were consistent with Kidd's reported limitations and the definition of sedentary work for the purpose of reviewing her PTD compensation application. The SHO noted that modern innovations in office equipment, such as sit or stand desks and wireless telephones, and the advancements in remote work technology, enable work-from-home employees to change positions at their convenience. Consequently, the SHO rejected Kidd's argument that she is physically incapable of performing sedentary work. The SHO also considered non-medical disability factors and concluded that Kidd is capable of returning to sustained remunerative employment and therefore denied the PTD compensation application. The commission refused continuing jurisdiction, and Kidd filed this mandamus action.

{¶ 6} Before the magistrate, Kidd argued the commission abused its discretion because it relied on a medical report (of Dr. Shah) that does not constitute some evidence under *Libecap*. The magistrate disagreed, finding *Libecap* distinguishable. The magistrate found that Dr. Shah's report sets forth restrictions that do not limit Kidd from activities in a sedentary job, noting, like the SHO, the advancements in work-from-home technology and workspace furniture that readily accommodate position changes. Concerning Kidd's second objection to the magistrate's decision, we note the magistrate's findings of fact provide an extensive recitation of the report of the vocational specialist, Veh, which includes Veh's quotation of Dr. Shah's statement that Kidd be "[a]llow[ed] rest periods every 15-20 minutes for 1-2 minutes as needed during standing, sitting, or walking." (Mag.'s Decision at ¶ 23.) Although the magistrate did not directly quote Dr. Shah's statement regarding Kidd needing rest periods, his indirect reference was sufficient to adequately recite that finding. Thus, Kidd's second objection lacks merit.

{¶ 7}   Kidd's first objection, however, is convincing.  We agree that the reasoning of the SHO and magistrate was flawed as to the law's application to the facts of this matter.  In their analyses of Kidd's ability to perform sedentary employment, both the SHO and magistrate emphasized advancements in workplace technology and furniture as means for Kidd to change her working position at her convenience.  Although workspace flexibility has advanced significantly in recent years, the definition for sedentary work in Ohio Adm.Code 4121-3-34(B)(2)(a) is the same as it existed when *Libecap* was decided in 1996. As in *Libecap*, Kidd's limitations found by Dr. Shah are seemingly inconsistent with that definition.

{¶ 8}   For the purpose of the adjudication of PTD compensation applications, Ohio Adm.Code 4121-3-34(B)(2)(a) defines "sedentary work" as the following:

> exerting up to ten pounds of force occasionally (occasionally: activity or condition exists up to one-third of the time) and/or a negligible amount of force frequently (frequently: activity or condition exists from one-third to two-thirds of the time) to lift, carry, push, pull, or otherwise move objects. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met.

In *Libecap*, William G. Littlefield, M.D., reported Libecap's limitations as follows:

> The medical and functional limitations are that the claimant would have difficulty in occupations requiring bending and lifting objects from below the level of the knee or any of them involving extreme rotation of the spine or performing over head activities. She would not be able to lift more than 5 or 10 pounds and would have difficulty in any occupation that would involve sitting or standing for more than 30 minutes. Frequent breaks and allowing the claimant to change positions would be required. Repetitive activities would not be tolerated in the upper extremities.

The commission denied Libecap's PTD compensation application based on the reports of Dr. Littlefield and a psychologist who provided "some insight to Ms. Libecap's psychological profile."  *Id.*  This court found that denial to be an abuse of discretion because the commission relied on reports that did not constitute some evidence.  Although Ohio

Adm.Code 4121-3-34(B)(2)(a) became effective after Libecap submitted her PTD compensation application, and thus technically did not apply, this court viewed Dr. Littlefield's limitation findings as not being "consistent with sedentary work as defined in the Ohio Administrative Code or with the general definition of 'sedentary work' utilized before Ohio Adm.Code 4121-3-34(B)(2)(a) became effective." *Libecap.*

{¶ 9} In *State ex rel. Owens Corning Fiberglass v. Indus. Comm.*, 10th Dist. No. 03AP-684, 2004-Ohio-3841, ¶ 56, this court noted that the problem in *Libecap* "was with the commission's finding of capacity for sedentary, sustained remunerative employment based on a report that, read in its entirety, clearly precluded sustained remunerative employment of a sedentary nature." This court further explained that "where a physician places the claimant generally in the sedentary category but has set forth functional capacities so limited that no sedentary work is really feasible (such as an inability to sit for more than 30 minutes), then the commission does not have discretion to conclude based on that report that the claimant can perform sustained remunerative work of a sedentary nature." *Owens Corning Fiberglass* at ¶ 56. *See State ex rel. Miller v. Indus. Comm.*, 10th Dist. No. 13AP-418, 2014-Ohio-1742, ¶ 54 (discussing the problem in *Libecap* and distinguishing the case because the restrictions in the physician's report did not preclude an ability to perform sedentary work). That is, "functional abilities may be so limited that only brief periods of work activities would be possible, which would not constitute sustained remunerative employment." *State ex rel. Elastomers v. Torok*, 10th Dist. No. 02AP-116, 2002-Ohio-4770, ¶ 14, citing *Libecap*. Resolution of the type of apparent inconsistency found in *Libecap* requires an adequate explanation by the commission. *See State ex rel. Howard v. Millennium Inorganic Chems.*, 10th Dist. No. 03AP-637, 2004-Ohio-6603, ¶ 12 (directing commission, pursuant to *Libecap*, to vacate order denying PTD compensation application and to enter a new order either granting or denying the application, with an explanation "adequately resolving the apparent inconsistency between the medical restrictions contained in [the medical report relied on] and the concept of the ability to maintain sustained remunerative employment.").

{¶ 10} The commission argues the SHO and magistrate properly found *Libecap* is distinguishable because Kidd not only can sit, stand, and walk, she can use a treadmill for approximately 30 minutes, four times per week. The commission also cites the advances

in technology and Kidd's potential proficiency in that regard as facts distinguishing this case from *Libecap*. But those facts do not address Kidd's apparent impediment to sedentary work, as that term is defined the Ohio Administrative Code. Sedentary work is defined to include "sitting most of the time." As acknowledged in *Libecap*, and further explained in *Owens Corning Fiberglass*, the inability to sit for more than 30 minutes is inconsistent with sedentary work as defined in the Ohio Administrative Code. And Kidd's use of a treadmill for 30 minutes, four times per week, is not inconsistent with the limitations discussed by Dr. Shah. The commission also suggests that Kidd's rest-period requirement would not be an impediment to sedentary work because she could change position or stand and walk as necessary. But Dr. Shah's report indicates that Kidd requires one- or two-minute rest periods every 15 to 20 minutes "as needed during standing, sitting, or walking." This indicates Kidd needs to stop working for one or two minutes every 15 to 20 minutes, not that she simply change positions, stand, or walk after sitting for a spell. Thus, we find Kidd's inability to sit for more than 30 minutes, and her need to take a one- or two-minute rest period every 15 to 20 minutes, is akin to the limitations this court found in *Libecap* to be seemingly inconsistent with sedentary work, as the Ohio Administrative Code defines that term. Consequently, we are persuaded by Kidd's first objection to the magistrate's decision.

{¶ 11} Following our independent review of the record pursuant to Civ.R. 53, we find no error in the magistrate's recitation of the facts. However, we find the magistrate erred in applying the pertinent law to those facts and determining the commission's denial of Kidd's PTD compensation application was not an abuse of discretion. We therefore sustain Kidd's first objection to the magistrate's decision, overrule her second objection to the magistrate's decision, and grant her request for a writ of mandamus. Accordingly, the commission shall vacate its order denying Kidd's PTD compensation application and enter a new order that adjudicates the PTD compensation application in a manner consistent with this decision.

*Objections sustained in part and overruled in part; writ granted.*

SADLER and BEATTY BLUNT, JJ.

**APPENDIX**

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Donna J. Kidd, | : | |
| Relator, | : | |
| v. | : | No. 20AP-364 |
| Industrial Commission of Ohio et al., | : | (REGULAR CALENDAR) |
| Respondents. | : | |

M A G I S T R A T E ' S   D E C I S I O N

Rendered on October 14, 2021

*Schaffer and Associates, L.P.A.,* and *Thomas J. Schaffer,* for relator.

*Dave Yost,* Attorney General, and *Anna Isupova,* for respondent Industrial Commission of Ohio.

IN MANDAMUS

{¶ 12} Relator, Donna J. Kidd, seeks a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order denying permanent total disability ("PTD") compensation for relator, and enter a new order that complies with *State ex rel. Libecap v. Indus. Comm.*, 10th Dist. No. 96APD01-29 (Sept. 5, 1996), *aff'd without opinion*, 83 Ohio St.3d 178 (1998).

Findings of Fact:

{¶ 13} 1.  Relator worked for respondent Tron Air, Inc. ("Tron Air"), as a warehouse and production worker.  On September 19, 2013, relator sustained an injury

in the course of and arising out of her employment with Tron Air when she lifted a heavy box while standing on a ladder and twisted her back while turning to put the box on a shelf. (Stip. at 1, 35-38.)

{¶ 14} 2. Relator's claim was allowed for "lumbosacral strain; herniated disc L5-S1; spinal stenosis without claudication lumbar L5-S1; failed lumbar spine surgery syndrome L5-S1." (Stip. at 35.)

{¶ 15} 3. Relator returned to work with restrictions until April 8, 2014, when Tron Air could no longer accommodate her restrictions. (Stip. at 35.)

{¶ 16} 4. Relator underwent surgery consisting of an L5 Gill procedure, posterior interbody fusion at L5-S1, and posterior nonsegmental instrumentation at L5-S1 on February 6, 2015. (Stip. at 2.) Surgery was performed by Brian F. Hoeflinger, M.D. (Stip. at 3.)

{¶ 17} 5. Relator was then referred for vocational rehabilitation. A Vocational Rehabilitation Closure Report in the record states that the vocational rehabilitation file was closed effective May 23, 2016 without relator securing employment. (Stip. at 5.)

{¶ 18} 6. Relator eventually secured work as a school cafeteria server in March 2017 and worked in that position until November 21, 2017. (Stip. at 17.)

{¶ 19} 7. Relator filed her application for PTD compensation on September 17, 2018. Relator supported her application with a report prepared by Mickey E. Frame, D.C. Dr. Frame noted that relator presented with increasing lower back pain with radiating left leg pain. Her condition had progressed to the point where she had difficulty with household tasks such as tying her own shoes. Dr. Frame noted severe restrictions of relator's range of motion and opined that, in his professional opinion, relator "is unable to return to gainful employment due to worsening of her lumbar disc condition and radicular leg complaints. It is further my opinion she would be considered permanently and totally disabled due to her allowed conditions of herniated disc L5-S1, lumbar spinal stenosis L5-S1." (Stip. at 11.) Dr. Frame's assessment was based on relator's inability to lift more than 10 pounds on an occasional basis and her need to change her position from sitting, standing, and lying on a frequent basis, without maintaining a sitting position more than 15 or 20 minutes. (Stip. at 11.)

{¶ 20} 8. Relator underwent an independent medical evaluation at the request of the commission by Sanjay Shah, M.D. Dr. Shah examined relator on January 16, 2019, and produced a report dated January 19, 2019. (Stip. at 24.) Dr. Shah recounted relator's past treatment including surgery and subsequent physical therapy. Dr. Shah noted that relator was able by her own account to use a treadmill four times per week for approximately 30 minutes and continued to drive as needed. Relator stated that she continued to do some chores at home including laundry, sweeping, and dishes, but at a slower pace. Relator reported being very limited in her attempts to cut grass and do other yard work. Relator was able to stand for approximately 20 minutes, sit for 20 to 30 minutes with changes in position, and walk for approximately one-half mile. Relator reported one-half pack of cigarettes per day and denied any alcohol use or non-prescribed controlled substances.

{¶ 21} Dr. Shah reviewed relator's medical records, including an August 2013 spinal MRI, Dr. Hoeflinger's February 2015 surgical report, a January 2016 x-ray of the lumbar spine, an MRI of the lumbar spine on the same date, and subsequent pain management in 2016. (Stip. at 26.) Dr. Shah also noted acupuncture treatment by Dr. Frame. Examination yielded the following observations by Dr. Shah:

> Blood pressure is 119/74. Pulse 82. Temperature 96.9. Weight 190 pounds. Height 5 ft. 4 inches. Examination of the lower extremities revealed that sensation was intact to light touch and pinprick. Deep tendon reflexes were 2+ at the quads and ankles. Strength was 5/5. Straight leg raising was negative in both a seated and supine position but noted tight hamstrings. She ambulated without an assistive device with a normal gait pattern. She was able to walk on her heels, toes, and squat without any difficulty. She has a 10 cm healed surgical scar of the lumbosacral area. There is tenderness over the lumbosacral paravertebral muscles. She has limited range of motion over the lumbosacral spine and range of motion was done with dual inclinometer and was consistent with flexion 37 degrees, extension 20 degrees, lateral bending to the right 26 degrees, lateral bending to the left 25 degrees. She had end range pain.

(Stip. at 26-27.)

{¶ 22} Dr. Shah summarized his opinion by stating that relator had reached maximum medical improvement ("MMI") for her condition post-surgery. He then

concluded that considering all limitations, relator could work at a sedentary level with additional restrictions of no bending, twisting, squatting, avoid overhead activities, and avoid activities that required increased balance including ladders.  (Stip. at 28.)

{¶ 23} 9.  Vocational Specialist, Anne Savage Veh, MA, LPCC-S, evaluated relator and produced a report dated March 15, 2019.  Veh reviewed relator's medical history with a particular eye to relator's vocational rehabilitation history.  Assessing these in light of relator's current assessment of her own pain and limitations, Veh concluded as follows:

> After consideration of the records reviewed and the information gathered during the evaluation, it is my opinion that due to Ms. Kidd's physical and exertional limitations as well as her severe chronic pain and non-transferrable skills, she is precluded from returning to any of her previous occupations.
>
> Dr. Shah opined that Ms. Kidd is capable of sedentary work with additional restrictions of no bending, twisting, squatting, avoid overhead activities and avoid activities that require increased balance, including ladders. Allow rest periods every 15-20 minutes for 1-2 minutes as needed during standing, sitting, or walking." [sic]
>
> It is my opinion that this list of restrictive barriers is less than a sedentary level and no employer will accommodate a break every 15 minutes due to being non-productive and inefficient for most job tasks. These restrictions are so limiting that Ms. Kidd would find it very difficult to find an employer willing to accommodate such requirements.
>
> Additionally, while sitting in this position for 15 minutes, Ms. Kidd is in pain and this affects her concentration. At home, she is able to change positions frequently. At a job, she would not have this opportunity because alternative between sitting, standing, and walking around would impact her ability to complete job tasks in a timely manner.
>
> Additionally, she participated in vocational rehabilitation and wanted to go back to work. Unfortunately, finding an employer who would accommodate her at the restrictive level such as she requires could not be identified, even after vocational rehabilitation services that included job seeking skills training, job development, job coaching and working with an employment specialist.

Though Ms. Kidd was engaged in several interviews, she was never offered a job.

Because of her determination to get a job, Ms. Kidd continued to search for a position on her own. She was hired by the Compass Group to serve lunches at Lake Schools. She worked from March 10, 2017 through November 21, 2017. The physical demands of the job were, ultimately more than she could manage. November 21, 2017 remains her last day of work.

Due to her age, disability, need to change positions, and the impact of her chronic pain on activities of daily living and being non-feasible for rehabilitation, any further retraining would be ineffective.

When the residual effects of Ms. Kidd's allowed conditions are considered along with her age (57-vocationally advanced), physical and exertional imitations, unrealistic restrictions as with a break every 15 minutes, chronic pain, and no transferrable skills, Ms. Kidd does not retain the capacity to engage in sustained, remunerative employment. It is my opinion that she is 100% totally unemployable.

If you have any questions or need additional information, please do not hesitate to call me.

The contents of this report are based on my opinion to a reasonable degree of professional certainty. I reserve the right for any modifications deemed necessary should further information become available.

(Stip. at 33-34.)

{¶ 24} 10. Relator's application for PTD was heard on August 28, 2019 before a commission staff hearing officer ("SHO"). The SHO issued an order mailed September 24, 2019 denying relator's application. (Stip. at 35.) The SHO noted relator's return to work after her initial injury, and subsequent work in other positions. The SHO then examined Dr. Shah's report and accepted Dr. Shah's opinion that relator was at MMI but could perform sedentary work with accommodations and restrictions. The SHO examined the definition of sedentary work under the Ohio Administrative Code and concluded as follows:

> The Staff Hearing Officer finds Ohio Adm.Code 4121-3-34(B)(2)(a) defines sedentary work as "exerting up to ten pounds of force occasionally (occasionally: activity or condition exists up to one-third of the time) and/or a negligible amount of force frequently (frequently: activity or condition exists from one-third to two-thirds of the time) to lift, carry, push, pull, or otherwise move objects. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met."

> The Injured Worker testified she wears a back brace and can sit for 20 to 30 minutes at a time. The Injured Worker indicated on her IC-2 application she was able to drive for one hour at a time, she was able to walk one-half mile at a time, stand and sit for 30 minutes each at a time, and able to lift up to 10 pounds. The Staff Hearing Officer finds the Injured Worker's testimony and the information provided on the IC-2 application are consistent with Dr. Shah's findings and restrictions, and Ohio Adm.Code 4121-3-34(B)(2)(a). The Staff Hearing Officer finds modern innovations in office equipment, such as sit/stand desks and wireless telephone technology, as well as work-from-home options, offers workers the ability to change positions at their convenience. Therefore, the Staff Hearing Officer is not persuaded by the Injured Worker's argument.

> Doctor Shah is found persuasive the Injured Worker is at maximum medical improvement for the allowed physical conditions and the Injured Worker is capable of performing work activities at the sedentary level as a result of injury-induced restrictions. The restrictions are found to prevent a return to work at the prior position of employment. However, considering the Injured Worker's degree of medical impairment in conjunction with her non-medical disability factors, the Staff Hearing Officer finds the Injured Worker is capable of returning to sustained remunerative employment and is not permanently and totally disabled.

(Stip. at 36.)

{¶ 25} The SHO noted relator's adaptability to other employment, age, determined relator's age to be a neutral factor, and her high school and vocational training as a positive factor. The SHO noted that relator's resume recounted past work with a

computer as early as 1989, her training as a typist, her ability to use a smart phone including posting social media, and found all of these to be transferrable skills. (Stip. at 37.)

{¶ 26} 11. Relator moved for reconsideration before the commission. (Stip. at 39.)

{¶ 27} 12. By order mailed October 25, 2019, the commission refused continuing jurisdiction pursuant to R.C. 4123.52. (Stip. at 44.)

{¶ 28} 13. Relator filed her complaint for writ of mandamus in this court on July 23, 2020 and her amended complaint on November 3, 2020.

Discussion and Conclusions of Law:

{¶ 29} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967). A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986). On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56 (1987). Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. *State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165 (1981).

{¶ 30} Relator argues that the commission relied on a medical report that did not support the commission's conclusions, and that the commission failed to properly assess the pertinent non-medical factors. For the reasons that follow, the magistrate concludes that the commission did not abuse its discretion in denying relator's application for PTD benefits. Dr. Shah's report, as well as the balance of the evidence in the record, constitutes some evidence upon which the commission could base that determination, and the commission addressed non-medical factors as required.

{¶ 31} Ohio Adm.Code 4121-3-34(B)(2)(a) defines sedentary work as requiring occasional exercise of up to ten pounds of force, occasionally constituting up to one-third

of work time, and the frequent exercise of negligible amounts of force. While sedentary work may involve sitting most of the time, it may involve walking or standing for brief periods. The definition of sedentary work under this code provision is not intended to provide an exhaustive list of findings that must be included in a doctor's report addressing the availability of a claimant for sedentary work. *State ex rel. Rice v. J.P. Industries, Inc.,* 10th Dist. No. 97AP-3 (Feb. 10, 1998 memorandum decision).

{¶ 32} Relator cites this court's 1996 decision in *Libecap*, in which this court found that a doctor's report did not constitute evidence on which the commission could rely to deny PTD compensation. The report in Libecap opined that the injured worker could sit for no more than 30 minutes at a time. Because this was inconsistent with the definition under the administrative code describing sedentary work as mostly seated with intervals of standing or walking, the court issued a writ vacating the commission's denial of PTD benefits.

{¶ 33} In contrast, Dr. Shah's report sets forth restrictions that do not limit relator from activities in a sedentary job as described above. His restrictions on bending or crawling are not pertinent to the definition of sedentary employment, and his other restrictions coincide with the duration limits described in the code. The SHO's observations regarding relator's potential technological proficiency would increase the flexibility of application of the described restrictions in a modern work environment including the potential for remote work by electronic means. The commission properly concluded that, while acknowledging the limitations described by Dr. Shah and other medical material in the record, relator's self-described ability to sit for twenty to thirty minutes at a time with changes in position, coupled with her ability to stand and walk for intervals, were consistent with sedentary employment. There was, therefore, some evidence upon which the commission could base its conclusion.

{¶ 34} Relator further asserts the commission erred in its analysis of factors set forth in *State ex rel. Stephenson v. Indus. Comm.*, 31 Ohio St.3d 167 (1987). These are the non-medical factors to be considered when assessing the ability to maintain sustained remunerative employment, and include age, education, work history, and "all other factors, such as physical, psychological, and sociological, that are contained within the record in making [a] determination of permanent total disability." *Id.* at 170. Relator

objects to the SHO's conclusion that relator's age of 58 was a neutral factor, her work history was a positive factor because it reflected a long and varied experience, and relator's education was above the standard required for entry-level sedentary work.

{¶ 35} Relator objects to the SHO's *Stephenson* analysis because, in relator's view, the SHO merely referred to each factor without tying the assessment to evidence in the record. Relator points out that Vocational Specialist Veh drew conclusions manifestly contrary to the conclusions drawn by the SHO, concluding that relator lacked transferable skills and her age was an impediment, and did not address some of the other points cited by the SHO.

{¶ 36} The commission, as the exclusive evaluator of weight and credibility of evidence, is not required to accept Veh's report as more or less persuasive than the other evidence, or accept the conclusions therein to the exclusion of any other assessment of the evidence when assessing the *Stephenson* factors. The SHO's order, in fact, weighed all the medical reports in the file, including relator's self-assessment and reported work history, and educational history, and made its own determination as to relator's vocational prospects. The SHO concluded that relator, at age 58 with a high school diploma including vocational training in graphic communications, coupled with a long and varied work history and self-reported good work ethic, could conclude that, coupled with the medical report of Dr. Shah describing a physical capacity to return to sedentary employment, the other factors weighed in favor of employability as well. Relator's educational background, job experience, work skills, and demonstrated work ethic represented transferrable skills that would be suitable for sedentary work in a modern flexible working environment.

{¶ 37} The magistrate accordingly concludes that the commission did not abuse its discretion in reaching its determination that it would deny relator's PTD application, and it is the report and recommendation that the requested writ be denied.

/S/ MAGISTRATE
MARTIN L. DAVIS

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).