DECISION ON OBJECTIONS TO MAGISTRATE'S DECISION.
{¶ 1} Relator, Robert L. Howard, filed this original action in mandamus. Pursuant to Civ.R. 53 and Loc.R. 12(M) of the Tenth District Court of Appeals, the matter was referred to a magistrate of this court. On November 26, 2003, the magistrate rendered a decision, including findings of fact and conclusions of law, and therein recommended that this court grant the writ. (Attached as Appendix A.) Respondents, Millennium Inorganic Chemicals ("Millennium") and the Industrial Commission of Ohio ("the commission") timely filed objections to the magistrate's decision, which are now before the court.
 {¶ 2} We begin with Millennium's objections. First, Millennium argues that, contrary to the conclusion of the magistrate on the issue, this court is bound by the prior agreement between the parties. The agreement provided, inter alia, that the staff hearing officer would not conclude that relator is permanently and totally disabled due to medical factors alone; rather, the hearing officer would first determine relator's medical capacity for work and then his ability to engage in sustained remunerative employment when considering non-medical, vocational and disability factors, pursuant toState ex rel. Stephenson v. Indus. Comm. (1987),31 Ohio St.3d 167, 31 OBR 369, 509 N.E.2d 946. Millennium argues that this court is bound by the parties' multi-provision agreement because this court previously journalized an entry dismissing Millennium's earlier mandamus action[1] "[p]ursuant to the stipulation of dismissal" filed by the parties. The referenced "stipulation of dismissal" contained a recitation of the parties' various agreements.
 {¶ 3} We agree with the magistrate's conclusion that this court is not bound by the parties' agreement. "Although a court may adopt and approve by journal entry agreements entered into by the parties, the agreement becomes effective upon adoption and journalization, which in this instance never occurred." Martinv. Martin (Sept. 20, 1984), 3rd Dist. No. 5-83-9, 1984 Ohio App. LEXIS 10778, at *5. Here, this court did not adopt and approve the parties' agreement, nor did the court incorporate any of the provisions of the same into its dismissal entry, even by reference. Accordingly, we are not bound by the parties' prior agreement by virtue of our dismissal entry journalized in the prior mandamus action.
 {¶ 4} Furthermore, the issue that relator placed squarely before this court by filing his complaint for a writ of mandamus in the instant case is whether the commission abused its discretion in denying his application for permanent total disability ("PTD") compensation. The key inquiry in such a case is whether relator is capable of sustained remunerative employment. The magistrate's decision did not impermissibly stray from this issue.
 {¶ 5} We further note that the commission's order dated November 25, 2002, which was mailed after this court's dismissal of the earlier mandamus action, and which set forth the parties' agreement, also provided for a full hearing de novo on the issue of relator's application for PTD compensation, and granted to the parties leave to offer new medical and other evidence if they so desired. Specifically, the order provided, in pertinent part:
The merits of the claimant's application for permanent and total disability filed November 22, 2000, are to be redetermined at a hearing de novo before a Staff Hearing Officer other than the Staff Hearing Officer who issued the order of the December 12, 2001. * * *
The parties are provided leave to submit additional medical, vocational, or other relevant evidence in respect to the application for permanent and total disability. * * *
When the period for submitting additional evidence expires, the Hearing Administrator is to schedule a hearing de novo before a Staff Hearing Officer to redetermine the merits of the application for permanent total disability compensation filed November 22, 2000.
(Emphasis sic.) Because the parties were not foreclosed in any way from fully litigating the medical issues, our adoption of the magistrate's conclusion that denial of relator's PTD application based on Dr. Dobrowski's report may have been an abuse of discretion would not unfairly prejudice any party. Both relator and Millennium had the opportunity to fully develop the medical evidence at the hearing held subsequent to the making of the parties' agreement.
 {¶ 6} Second, Millennium argues that because the commission was "contractually bound" to make the determination that it did, the magistrate and this court are prohibited from finding that the commission abused its discretion in so doing. This argument is equally unavailing since, again, this court is concerned with arriving at a lawful conclusion as to the merits of relator's PTD application. We reject the principle advanced by Millennium that the commission may make conclusions that are contrary to law so long as it does so pursuant to an agreement with the parties.
 {¶ 7} Third, Millennium, joined by the commission, argues that the case of State ex rel. Libecap v. Indus. Comm. (Sept. 5, 1996), 10th Dist. No. 96APD01-29, affirmed (1998),83 Ohio St.3d 178, 699 N.E.2d 63, is factually distinguishable from the present case such that the magistrate erroneously relied upon it in reaching her conclusions. Specifically, respondents point out that the medical report relied upon in Libecap opined that the claimant was capable of performing sedentary work but also indicated physical restrictions due to the allowed conditions that were inconsistent with the legal definition of sedentary work. Based upon this obvious inconsistency, a panel of this court issued a limited writ vacating the order denying the claimant's PTD application, and remanding the matter for reconsideration of the order. The court declined to grant a full writ because it acknowledged "some room for interpretation of the medical and psychological evidence."
 {¶ 8} Respondents argue that Dr. Dobrowski's report in the present case contains no inconsistencies of the type we deemed problematic in Libecap. They note that Dr. Dobrowski concluded that relator is capable of performing sedentary work, and identified no restrictions that are inconsistent or incompatible with that type of work. They argue that the magistrate impermissibly reweighed the evidence and substituted her judgment for that of the commission.
 {¶ 9} Libecap has been cited for the proposition that, "where a physician places the claimant generally in the sedentary category but has set forth functional capacities so limited that no sedentary work is really feasible * * * then the commission does not have discretion to conclude based on that report that the claimant can perform sustained remunerative work of a sedentary nature." State ex rel. Owens Corning Fiberglass v.Indus. Comm., 10th Dist. No. 03AP-684, 2004-Ohio-3841, ¶ 56. The "commission cannot simply rely on a physician's `bottom line' identification of an exertional category but must base its decision on the specific restrictions imposed by the physician in the body of the report." Ibid. The court in Owens Corning went on to explain:
In Libecap, the problem was not that the doctor's report was defective because claimant was placed in the sedentary category. Doctors may be unaware of legal criteria and the doctor in that case had set forth clear and unambiguous functional restrictions in his discussion that would permit short periods of sedentary activity. Rather, the problem was with the commission's finding of capacity for sedentary, sustained remunerative employment based on a report that, read in its entirety, clearly precluded sustained remunerative employment of a sedentary nature.
Conversely, where a physician's checklist states that the claimant is medically precluded from performing any sustained remunerative employment but where the narrative report, read in its entirety, clearly and unambiguously sets forth a capacity for sustained remunerative employment, then the commission lacks discretion to rely on that report for a finding of medical inability to perform any sustained remunerative employment.
Id. at ¶ 56-57. (Emphasis sic.)
 {¶ 10} "[F]unctional abilities may be so limited that only brief periods of work activities would be possible, which would not constitute sustained remunerative employment. * * * [That is,] regardless of the fact that the physician placed claimant in the `sedentary' category, the specific restrictions [may be] so narrow as to preclude sustained remunerative employment." Stateex rel. Clevite Elastomers v. Torok, 10th Dist. No. 02AP-116, 2002-Ohio-4770, ¶ 14.
 {¶ 11} The magistrate in the present case determined that the medical limitations set forth in Dr. Dobrowski's narrative report were narrow enough so as to preclude relator from performing any sustained remunerative employment. We agree with the magistrate inasmuch as the restriction-related findings contained in Dr. Dobrowski's report seem inconsistent with the possibility of relator maintaining sustained remunerative employment. Dr. Dobrowski noted that relator's inability to maintain a voice loud enough to be heard over normal conversation and background noise would make it "very difficult [for relator] to maintain any type of communication with any fellow workers." He noted that relator's voice "tires rapidly and tends to become inaudible after a few seconds to minutes." He also found that relator's shortness of breath (dyspnea) is "aggravated by performance of any unusual activities of daily living beyond personal cleansing, grooming or equivalent." Finally, Dr. Dobrowski opined that relator's whole person impairment is equivalent to "eighty percent using the strictest criteria and could easily be elevated to ninety percent based on the physical characteristics of obstructed air passage defect."
 {¶ 12} We take note of the fact that Dr. Dobrowski opined that, from a medical standpoint, relator had suffered a nearly 100 percent whole person impairment as a result of the allowed conditions in his claim. This is not akin to a finding that relator is or is not capable of sustained remunerative employment. It is for the commission to make this determination — which is a determination as to disability as opposed toimpairment — based upon the evidence. See State ex rel. Woodsv. Indus. Comm. (1990), 50 Ohio St.3d 227, 229, 553 N.E.2d 665
(holding that for purposes of a permanent total disability determination, examining physicians are confined to the question of medical impairment, i.e., loss of anatomical and/or mental function, while the question of disability is one solely for the commission.) We share the magistrate's view that the commission abused its discretion in denying relator's PTD application, based upon Dr. Dobrowski's report, without adequately resolving the apparent inconsistency between the medical restrictions contained in that report and the concept of the ability to maintain sustained remunerative employment.
 {¶ 13} The commission argues, however, that, contrary to the magistrate's recommendation, this is not a case in which it would be appropriate to grant a full writ of mandamus ordering approval of relator's PTD application, pursuant to State ex rel. Gay v.Mihm (1994), 68 Ohio St.3d 315, 626 N.E.2d 666. As this court did in Libecap, we acknowledge that there exists room for interpretation of the medical evidence. Unlike the magistrate, we do not perceive the clarity of permanent total disability thatGay requires. We will thus grant a limited writ of mandamus so that the commission may resolve the issue whether or not Dr. Dobrowski's report is consistent with the possibility of relator maintaining sustained remunerative employment.
 {¶ 14} For all of the foregoing reasons, we overrule Millennium's objections and we sustain in part and overrule in part the commission's objections. We adopt the findings of fact contained in the magistrate's decision, and modify the conclusions of law therein, in accordance with our conclusions above. We issue a limited writ of mandamus compelling the commission to vacate its order denying relator's application for PTD compensation. The writ shall further compel the commission to enter a new order either granting or denying the application, with an appropriate explanation of the commission's decision.
Respondent-Millennium's objections overruled;respondent-commission's objections sustained in part andoverruled in part; limited writ of mandamus granted.
Lazarus, P.J., and Bryant, J., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State ex rel. Robert L. Howard, : Relator, : v. : No. 03AP-637 Millenium Inorganic Chemicals and: (REGULAR CALENDAR) Industrial Commission of Ohio, : Respondents. :
 MAGISTRATE'S DECISION Rendered on November 26, 2003 Bentoff Duber Co., L.P.A., and Glen Richardson, for relator.
Vorys, Sater, Seymour and Pease LLP, and Mary EileenPurcell, for respondent Millennium Inorganic Chemicals.
Jim Petro, Attorney General, and Lisa R. Miller, for respondent Industrial Commission of Ohio.
 IN MANDAMUS {¶ 15} In this original action in mandamus, relator, Robert L. Howard, asks the court to issue a writ compelling respondent Industrial Commission of Ohio ("commission") to vacate its order denying compensation for permanent total disability ("PTD") and to issue a new order granting PTD compensation.
Findings of Fact:
 {¶ 16} 1. In July 1996, Robert L. Howard ("claimant") sustained an industrial injury, and his workers' compensation claim was allowed for subglottal stenosis, chemical burns of the face, neck, back, and eyes, epiglottis pneumonia, laryngeal tracheal stenosis, deep venous thrombosis left calf; left lower lobe pneumonia.
 {¶ 17} 2. In November 2000, claimant filed a PTD application.
 {¶ 18} 3. In February 2001, claimant was examined on behalf of the commission by John Dobrowski, M.D., an otorhinolaryngologist, who found that claimant experienced severe obstruction of the larynx and upper trachea due to the industrial injury. Surgery had been attempted to try to obtain a better air flow, but it was unsuccessful, and claimant must use a tracheal stoma. Dr. Dobrowski opined that claimant experienced severe shortness of breath, which was aggravated by activities beyond personal cleansing and grooming or the equivalent, and he estimated a "greater than fifty percent" impairment of the whole person based on the breathing difficulties. In addition, claimant also suffered substantial speech impairment, including loss of audibility and functional efficiency. Speech was "labored and impracticably slow," although claimant could make himself understood for a short period of time if the listener was close and the environment was quiet. Dr. Dobrowski found an 85 percent loss of speech capacity, which accounted for an additional 30 percent impairment of the whole person. Combining the breathing impairment with the speech impairment, Dr. Dobrowski found an overall impairment of 80 percent when "using the strictest criteria," but he stated that the impairment rating could "easily be elevated to ninety percent" due to the characteristics of the obstructed air passage.
On an accompanying checklist form, Dr. Dobrowski indicated that claimant was "capable of physical work activity," but did not indicate a level. On a subsequent form, he indicated that claimant was capable of activity at the sedentary level.
 {¶ 19} 4. On February 9, 2001, claimant was examined with regard to his venous thrombosis and pneumonia by a pulmonary specialist, David M. Rosenberg, M.D., who opined that the conditions had resolved and caused no permanent impairment.
 {¶ 20} 5. Employability assessments were prepared by Tracy H. Young and Mark A. Anderson.
 {¶ 21} 6. In December 2001, the commission heard the PTD application. In the order granting the application, the hearing officer noted among other things that claimant had undergone approximately 14 surgeries due to the industrial injury, and that he had a tracheotomy opening through which he breathed. The hearing officer noted that claimant was required to clean the opening with distilled water four to five times per day and also had to dilate the opening with a tube up to five times per day. The hearing officer concluded that the medical factors alone precluded sustained remunerative employment and that, accordingly, there was no need to consider claimant's vocational capacity to perform some other kind of work.
 {¶ 22} 7. The employer filed a mandamus action in this court, case number 02AP-358. However, before the matter was heard, the parties reached a settlement and dismissed the action.
 {¶ 23} 8. In November 2002, the commission issued an order stating that the PTD application would be reheard de novo. Among other things, the commission noted that the parties had reached several agreements, including these:
(1) The Staff Hearing Officer will not determine that the claimant is medically unable to work, pursuant to State exrel. Galion Mfg. Div., Dresser Industries, Inc.v. Haygood (1991), 60 Ohio St.3d 38; but rather, the Staff Hearing Officer will determine the claimant's physical capacity level, based upon the weight of the medical evidence, and then the Staff Hearing Officer will determine whether the claimant has the ability to engage in sustained remunerative employment when considering the claimant's nonmedical vocational disability factors as provided in State ex rel. Stephenson v.Industrial Commission (1987), 31 Ohio St. 3d 167;
(2) The Staff Hearing Officer will not rely upon the report of Dr. Eliacher dated November 14, 2000 for the purpose of determining whether Robert Howard is permanently and totally disabled, unless the hearing officer specifically provides findings that reconcile the November 14, 2000 report with Dr. Eliacher's clinic note dated August 13, 2001 * * * [.]
 {¶ 24} 9. In March 2003, the commission reheard the PTD application and denied it. In regard to the claimant's medical capacity to perform sustained remunerative employment, the hearing officer stated:
This order is based upon the reports of Dr. Dobrowski, Rosenberg as well as the vocational reports from Mr. Anderson and Miss Young.
Dr. Dobrowski, who performed an otorhinolaryngology examination of the claimant on behalf of the Industrial Commission regarding the conditions SUBGLOTTAL STENOSIS; CHEMICAL BURNS-FACE, NECK, BACK, EYES; EPIGLOTTIS PNEUMONIA; LARYNGEAL, TRACHEAL STENOSIS; SUBGLOTTIC STENOSIS indicated that the claimant has reached maximum medical improvement and that he can not return to his former position of employment but is capable of performing sedentary work activities which means exerting up to 10 pounds of force frequently, to lift, carry, push, pull, or otherwise move objects.
Dr. Rosenberg, who is a pulmonary specialist also performed an examination of the claimant on behalf of the Industrial Commission strictly regarding the conditions of deep venous thrombosis and left lower lobe pneumonia indicated that the claimant has reached maximum medical improvement and that he can return to work at his former position of employment without any restrictions, strictly based upon said two conditions. He further indicated that the claimant has a 0% permanent partial impairment with respect to the whole person as it relates to the two conditions deep venous thrombosis and left lower lobe pneumonia only.
Therefore, based upon the opinions of Dr. Dobrowski and Dr. Rosenberg who combined examined the claimant on all of the allowed conditions for which claimant's sole industrial injury is recognized, the Staff Hearing Officer concludes on a whole that the claimant is medically capable of performing some sustained remunerative employment. * * *
 {¶ 25} The commission proceeded to consider the nonmedical factors, and concluded that the claimant's age, education, and work history were positive factors. Based on the vocational and medical ability to perform sedentary work, the commission denied PTD.
 {¶ 26} 10. Reconsideration was denied.
Conclusions of Law:
 {¶ 27} In this action, claimant argues that the commission abused its discretion in denying PTD compensation. The magistrate agrees.
 {¶ 28} It is important to note that the commission chose to rely on the report of Dr. Dobrowski. In that report, Dr. Dobrowski opined that claimant's overall impairment could easily be set at 90 percent of the whole person. He found that claimant had a severe breathing impairment that, by itself, rendered him more than 50 percent disabled, and he further opined that the shortness of breath was aggravated by activities beyond personal cleansing, grooming, and the equivalent. In addition, Dr. Dobrowski gave a detailed description of claimant's substantial incapacities in speech, which caused additional impairment.
 {¶ 29} The magistrate finds that the facts here, in their essence, are strikingly similar to those in State ex rel.Libecap v. Indus Comm. (Sept. 5, 1996), Franklin App. No. 96AP-29, affirmed (1998), 83 Ohio St.3d 178. In Libecap, the commission ruled that the claimant could perform sedentary work, relying on a medical opinion to that effect. However, in his report, the physician had opined that the claimant could sit for no more than 30 minutes at a time and needed frequent breaks. In mandamus, this court granted a writ because the evidence on which the commission relied did not support its finding of medical ability to perform sustained remunerative employment. The court articulated the principle that, regardless of the fact that a physician has placed a claimant generally in the sedentary category, the specific limitations imposed by the physician may be so restrictive that sustained remunerative employment is medically precluded.
 {¶ 30} In the present action, Dr. Dobrowski did not opine on the checklist form that claimant could engage in "sustained remunerative employment" at the sedentary level of exertion. Rather, he indicated generally that claimant could perform "activity" of a sedentary nature. However, the specific medical limitations set forth in his narrative report are so restrictive that they preclude claimant from performing any sustained remunerative employment. For example, Dr. Dobrowski found that claimant could perform personal cleansing on a daily basis but that activities beyond that would aggravate his shortness of breath. Further, Dr. Dobrowski found that claimant could barely talk, having sustained an 85 percent loss of speech caused by the injuries to the larynx and related areas. His report as a whole simply does not support the commission's finding that claimant is medically capable of sustained remunerative employment.
 {¶ 31} The settlement agreement reached by the parties in the prior mandamus action (that the commission would refrain from concluding that claimant was medically unable to work) may have been contractually binding on the parties who entered it, but that agreement does not bind this court. The fact that the court issued an entry terminating the mandamus action pursuant to the parties' dismissal under Civ.R. 41(A) does not alter this conclusion. A dismissal under Civ.R. 41(A) is self-executing, and the court's termination of the case was not an approval of the settlement agreement.
 {¶ 32} The magistrate concludes that the commission abused its discretion in denying PTD. The commission's explanation of its rationale regarding claimant's medical capacity is not supported by the evidence it cited, constituting a violation ofState ex rel. Noll v. Indus. Comm. (1991), 57 Ohio St.3d 203. Based on the foregoing findings of fact and conclusions of law, the magistrate further concludes that a full writ is warranted pursuant to State ex rel. Gay v. Mihm (1994),68 Ohio St.3d 315, directing the commission to grant PTD compensation.
/s/ P.A. Davidson 
 P.A. DAVIDSON MAGISTRATE
[1] The case number was 02AP-358.