IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Mary Mignella, | : | |
| Relator, | : | |
| | : | No. 22AP-155 |
| v. | : | (REGULAR CALENDAR) |
| Industrial Commission of Ohio et al., | : | |
| Respondents. | : | |

---

D E C I S I O N

Rendered on November 9, 2023

---

**On brief:** *Green Haines Sgambati Co., LPA, Shawn D. Scharf*, and *Charles W. Oldfield*, for relator.

**On brief:** *Dave Yost*, Attorney General, and *John Smart*, for respondent Industrial Commission of Ohio.

**On brief:** *Ennis Britton Co., LPA*, and *Giselle S. Spencer*, for respondent Warren City School District Board of Education.

---

IN MANDAMUS
ON OBJECTION TO THE MAGISTRATE'S DECISION

DORRIAN, J.

{¶ 1} Relator, Mary Mignella, filed this original action in mandamus seeking a writ compelling respondent Industrial Commission of Ohio ("commission") to vacate its order denying Mignella's application for permanent total disability ("PTD") compensation and enter an order granting such compensation. Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law, which is appended hereto. The magistrate recommends this court deny the request for a writ of mandamus. Having determined the magistrate correctly concluded the independent medical examiner's report constituted some evidence on which the commission could rely in denying Mignella's application, we overrule Mignella's objection to the magistrate's decision and deny the writ.

{¶ 2} Mignella has filed the following objection to the magistrate's decision:

> Pursuant to Civil Rule 53(D)(3)(b) and Local Rule 13(M)(2), Relator, Mary Mignella, objects to the Magistrate's conclusion that she is capable of sedentary work and thus, that she is capable of sustained, remunerative employment and is ineligible for permanent total disability benefits.

{¶ 3} Mignella was a teacher employed by respondent Warren City School District Board of Education and, on March 9, 2011, she suffered injuries due to a fall at work. A workers' compensation claim was allowed for sprain lumbrosacral, sprain lumbar region, sprain sacroiliac, sprain thoracic region, neck sprain, left shoulder sprain, open wound lip, necrosis of pulp teeth 8 and 9, lumbar intervertebral disc displacement L4-5 and L5-S1, bulging disc without myelopathy C5-6, cervical intervertebral disc displacement C6-7 and C7-T1. On January 15, 2015, Mignella filed an application for PTD compensation; her application was supported by a report from Denise M. Carradine, D.C., opining that Mignella had a 69 percent whole body permanent physical impairment and was incapable of work. Mignella also presented a vocational evaluation report concluding she would be unable to sustain remunerative employment.

{¶ 4} Karen Gade-Pulido, M.D., conducted an independent medical examination of Mignella at the commission's request. Dr. Gade-Pulido opined that Mignella had a 48 percent whole person impairment and was capable of sedentary work but would need to be allowed to change position every 20 minutes. In relevant part, Dr. Gade-Pulido summarized her conclusions as follows:

> Ms. Mignella demonstrates reduced range of motion of the cervical and lumbrosacral spine with objective evidence of underlying allowed disc pathology which precludes her ability to maintain prolonged static positioning as well as her ability to walk or stand for more than 30 minutes. These conditions also preclude heavy lifting of more than would be required in a sedentary level of work. Based solely upon the allowed physical conditions of this industrial claim, she is capable of a sedentary level of work; however, she would need to be allowed to change position every 20 minutes.

(Dr. Gade-Pulido Report at 8.)

{¶ 5} A commission staff hearing officer ("SHO") conducted a hearing on the PTD application on April 28, 2020. In a decision mailed May 1, 2020, the SHO found Mignella was not permanently and totally disabled, relying on the report of Dr. Gade-Pulido to

conclude that Mignella was capable of sedentary work. Mignella sought reconsideration of the SHO's decision, and the commission denied the request for reconsideration. Mignella filed a complaint in mandamus in this court on March 9, 2022.

{¶ 6} A relator seeking a writ of mandamus as a remedy from a commission decision must demonstrate that he or she has a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. *State ex rel. Rouch v. Eagle Tool & Machine Co.*, 26 Ohio St.3d 197, 198 (1986). A clear legal right to a writ of mandamus exists when the commission abuses its discretion by entering an order not supported by some evidence. *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76, 79 (1986).

{¶ 7} In her sole objection, Mignella argues the magistrate erred by concluding that Dr. Gade-Pulido's report constituted some evidence on which the commission could rely in concluding that she was capable of sedentary employment and denying her PTD application. Mignella asserts Dr. Gade-Pulido's requirement that she change position every 20 minutes, when read in conjunction with the conclusion that she could not stand or walk more than 30 minutes, constituted a restriction on the length of time Mignella could sit. Citing this court's decisions in *State ex rel. Libecap v. Indus. Comm.*, 10th Dist. No. 96APD01-29 (Sept. 5, 1996); *State ex rel. Owens Corning Fiberglass v. Indus. Comm.*, 10th Dist. No. 03AP-684, 2004-Ohio-3841; and *State ex rel. Kidd v. Indus. Comm.*, 10th Dist. No. 20AP-364, 2022-Ohio-450, Mignella argues the limitations set forth in Dr. Gade-Pulido's report are not consistent with the requirements of sedentary work.

{¶ 8} Mignella raised this same argument before the magistrate and the magistrate rejected it, concluding that the requirement of changing her position every 20 minutes did not constitute a temporal limitation on Mignella's ability to sit. The magistrate distinguished this court's decision in *Kidd*, in which we concluded that a claimant's inability to sit for more than 30 minutes and need to take a 1 to 2 minute rest period every 15 to 20 minutes was inconsistent with sedentary work. In this case, the magistrate concluded there was no clear or apparent inconsistency between the medical limitations imposed in Dr. Gade-Pulido's report and the conclusion that Mignella could maintain sustained remunerative employment and, therefore, the report constituted some evidence on which the commission could rely in denying Mignella's application for PTD compensation.

{¶ 9}  After the magistrate issued his decision in this case and Mignella submitted her objection, the Supreme Court of Ohio decided the appeal of this court's decision in *Kidd*. *State ex rel. Kidd v. Indus. Comm.*, ___ Ohio St.3d ___, 2023-Ohio-2975.  In that decision, the Supreme Court reversed this court's judgment and denied the claimant's request for a writ of mandamus.  *Id.* at ¶ 35.  The independent medical examiner in that case reported the claimant could stand for approximately 20 minutes, sit for 20 to 30 minutes with a change in position, and walk half a mile.  *Id.* at ¶ 25.  Based on those limitations, the independent medical examiner concluded the claimant could work at a sedentary level and would need to be allowed rest periods of 1 to 2 minutes every 15 to 20 minutes while standing, sitting, or walking.  *Id.*  The Supreme Court held that the restrictions contained in the independent medical examiner's report were consistent with sedentary work as defined in the Ohio Administrative Code and therefore the commission could rely on that report as some evidence the claimant was medically capable of sedentary work.  *Id.* at ¶ 26.

{¶ 10} Following the Supreme Court's decision in *Kidd*, Mignella filed a supplemental brief asserting the SHO in her case relied solely on Dr. Gade-Pulido's bottom line conclusion and failed to consider the specific restrictions imposed in her report.[1] Contrary to Mignella's claim, however, the SHO's order expressly discussed the restrictions included in Dr. Gade-Pulido's report in concluding that Mignella was medically capable of sedentary work.  Therefore, the magistrate did not err by concluding that Dr. Gade-Pulido's report constituted some evidence on which the commission could rely in denying Mignella's application for PTD compensation.  Accordingly, we overrule Mignella's sole objection to the magistrate's decision.

{¶ 11} Upon review of the magistrate's decision, an independent review of the record, and due consideration of Mignella's objection, we find the magistrate has properly determined the pertinent facts and applied the appropriate law. We therefore overrule Mignella's objection to the magistrate's decision and adopt the magistrate's decision as our

---

[1] As the magistrate explains, our decision in *Libecap* and subsequent cases have developed the principle that the commission may not simply rely on a physician's bottom line identification of an exertional category but must base its decision on the specific restrictions set forth within a physician's report.  We acknowledge that in *Kidd* the Supreme Court declared *Libecap* "has no precedential value"; however, the court also found the underlying principle developed in *Libecap* and its progeny to be "distinguishable from, and inapplicable to, this case." *Kidd*, 2023-Ohio-2975, at ¶ 33-34. Thus, the Supreme Court did not expressly overrule the holding of *Libecap* and its progeny.

own, including the findings of fact and conclusions of law contained therein.  Accordingly, the requested writ of mandamus is hereby denied.

*Objection overruled*;
*writ of mandamus denied.*

LUPER SCHUSTER and LELAND, JJ., concur.

_____

[Cite as *State ex rel. Mignella v. Indus. Comm.*, 2023-Ohio-4074.]

# APPENDIX

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Mary Mignella, | : | |
| Relator, | : | |
| v. | : | No. 22AP-155 |
| Industrial Commission of Ohio et al., | : | (REGULAR CALENDAR) |
| Respondents. | : | |

## M A G I S T R A T E ' S   D E C I S I O N

### Rendered on July 25, 2023

*Green Haines Sgambati Co., LPA, Shawn D. Scharf,* and *Charles W. Oldfield*, for relator.

*Dave Yost,* Attorney General, and *John Smart,* for respondent Industrial Commission of Ohio.

*Ennis Britton Co., L.P.A.,* and *Giselle S. Spencer*, for respondent Warren City School District Board of Education.

### IN MANDAMUS

{¶ 12} Relator, Mary Mignella, seeks a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying relator's request for reconsideration and to enter an order approving relator's application for permanent total disability ("PTD") compensation.

## I. Findings of Fact

{¶ 13} 1. On March 9, 2011, relator sustained an injury due to a fall in the course of and arising out of her employment with respondent Warren City School District Board of Education ("employer").

{¶ 14} 2. Relator's workers' compensation claim was allowed for the following conditions: "sprain lumbrosacral; sprain lumbar region; sprain sacroiliac; sprain thoracic region; neck sprain; left shoulder sprain; open wound lip; necrosis of pulp teeth 8 and 9; lumbar intervertebral disc displacement L4-5 and L5-S1; bulging disc without myelopathy C5-6; cervical intervertebral disc displacement C6-7 and C7-T1." (R. at 57.)

{¶ 15} 3. Relator was examined on December 10, 2014 by Denise M. Carradine, D.C., for the purpose of evaluating impairment. In a report dated the same day, Dr. Carradine found that relator had sustained a 69 percent permanent physical impairment of the body as a whole. Dr. Carradine found that relator was incapable of work.

{¶ 16} 4. Relator filed an IC-2 application for compensation for PTD dated January 15, 2015.

{¶ 17} 5. An independent medical examination of relator was conducted by Karen Gade-Pulido, MD. In a report dated January 3, 2020, Dr. Gade-Pulido found that relator "changed position frequently throughout the interview noting pain in her low back predominantly while seated." (R. at 44.) Dr. Gade-Pulido found that relator had reached maximum medical improvement with regard to the allowed conditions. Dr. Gade-Pulido provided an estimated whole person impairment arising from each allowed condition, supported by comments indicating the basis for the opinion. From the combined values of the impairment for each allowed condition, Dr. Gade-Pulido found relator had sustained a 48 percent whole person impairment. In considering relator's residual functional capacity resulting from the impairment associated with the allowed conditions, Dr. Gade-Pulido opined:

> [Relator] demonstrates reduced range of motion of the cervical and lumbrosacral spine with objective evidence of underlying allowed disc pathology which precludes her ability to maintain prolonged static positioning as well as her ability to walk or stand for more than 30 minutes. These conditions also preclude heavy lifting of more than would be required in a sedentary level of work. Based solely upon the allowed physical conditions of this industrial claim, she is capable of a sedentary level of work; however, she would need to be allowed to change position every 20 minutes.

(R. at 48.) Finally, Dr. Gade-Pulido noted on the physical strength rating form that relator was capable of sedentary work with the limitation that "[s]he should be allowed to change position every 20 minutes." (R. at 49.)

{¶ 18} 6. John Ruth, M.S., C.D.M.S., completed a vocational evaluation of relator and documented the findings in a report dated February 27, 2020. Ruth found that relator "will be unable to successfully seek or sustain remunerative employment now or in the future." (R. at 54.)

{¶ 19} 7. On April 28, 2020, a commission staff hearing officer ("SHO") heard the issue of relator's January 16, 2015 IC-2 application for PTD compensation. In an order mailed May 1, 2020, the SHO denied the IC-2 application based on the report of Dr. Gade-Pulido. The SHO made the following findings regarding Dr. Gade-Pulido's report:

> Dr. Gade-Pulido, who has examined [relator] on behalf of the [commission], indicated that [relator's] conditions has reached maximum medical improvement and that she cannot return to her former position of employment, but would be capable of performing sedentary work, which means [relator] would be capable of exerting up to ten pounds of force frequently to lift, carry, push, or otherwise move objects. She further indicated that [relator] would be capable of performing occupations which would involve sitting most of the time but may involve walking or standing for brief periods of time. She sums up her opinion by indicated that [relator] would need to be allowed to change positions every 20 minutes and has a 48% permanent partial impairment with respect to the whole person as it relates to [relator's] sole industrial injury from an orthopedic standpoint.

(R. at 57.) The SHO concluded that "based upon the opinion of Dr. Gade-Pulido, who has examined [relator] on all of the allowed conditions for which [relator's] sole industrial injury is recognized, the [SHO] concludes that [relator] is medically capable of performing some sustained remunerative employment, i.e. sedentary work." (R. at 57.)

{¶ 20} The SHO considered relator's nonmedical disability factors, finding: (1) relator's age was an unfavorable factor in her reemployment potential; (2) relator's education was a positive factor given evidence of ability to learn new skills conducive to at least sedentary work in an entry-level work environment; (3) relator's work history and work experience were a positive factor because relator's skilled work history would not necessarily preclude her ability to access other unskilled to skilled work given relator's education and ability to read, write, and do basic math; and (4) relator's work history indicated she had many transferrable skills within the employment restrictions described by Dr. Gade-Pulido. In summary, the SHO concluded that relator's "non-medical disability factors on a whole favor re-employment, i.e. that [relator's] positive education and work

history factors outweigh [relator's] negative age factor" and found that relator "can at least be retrained and perform some other occupation based upon her education, and work history or at least have the ability to access other work in a sedentary office work environment." (R. at 58.) Therefore, the SHO found relator was not precluded from engaging in sustained remunerative employment and was not permanently and totally disabled.

{¶ 21} 8. Relator filed a request for reconsideration from the April 28, 2020 SHO decision. The commission denied relator's request in an order mailed June 9, 2020 on the basis that relator's request for reconsideration failed to meet the criteria of Industrial Commission Resolution R18-1-06.

{¶ 22} 9. Relator filed a complaint in mandamus in the instant case on March 9, 2022.

{¶ 23} 10. On March 17, 2022, the commission moved for an order dismissing the Bureau of Workers Compensation ("BWC") as a party to the action. On March 24, 2022, relator filed a notice voluntarily dismissing her claims against the BWC pursuant to Civ.R. 41(A)(1)(a).

## II. Discussion and Conclusions of Law

{¶ 24} Relator seeks a writ of mandamus ordering the commission to award relator PTD compensation, arguing that the commission erred in its determination of relator's capacity for sedentary work.

## A. Requirements for Mandamus

{¶ 25} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, a relator must establish a clear legal right to the requested relief, that the commission has a clear legal duty to provide such relief, and the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Belle Tire Distribs. v. Indus. Comm.*, 154 Ohio St.3d 488, 2018-Ohio-2122; *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967). Where the commission's determination is supported by some evidence, it has not abused its discretion and this court must uphold the decision. *State ex rel. Seibert v. Richard Cyr, Inc.*, 157 Ohio St.3d 266, 2019-Ohio-3341, ¶ 44, citing *State ex rel. Pass v. C.S.T. Extraction Co.*, 74 Ohio St.3d 373, 376 (1996).

{¶ 26} The commission is "exclusively responsible for assessing the weight and credibility of evidence." *State ex rel. George v. Indus. Comm.*, 130 Ohio St.3d 405, 2011-Ohio-6036, ¶ 11, citing *State ex rel. Burley v. Coil Packing, Inc.*, 31 Ohio St.3d 18 (1987). Where the commission's decision is supported by some evidence, the presence of contrary evidence in the record is immaterial. *State ex rel. West. v. Indus. Comm.*, 74 Ohio St.3d 354, 356 (1996), citing *Burley*. However, the commission cannot rely on a medical opinion that is equivocal or internally inconsistent. *George* at ¶ 11. *See State ex rel. Lopez v. Indus. Comm.*, 69 Ohio St.3d 445, 449 (1994).

**B. Permanent Total Disability under Workers' Compensation Law**

{¶ 27} "[T]he purpose of permanent and total disability benefits is to compensate injured persons for impairment of earning capacity." *State ex rel. Stephenson v. Indus. Comm.*, 31 Ohio St.3d 167, 170 (1987), citing *State ex rel. Gen. Motors Corp. v. Indus. Comm.*, 42 Ohio St.2d 278 (1975). "Permanent total disability is the inability to do any sustained remunerative work." *State ex rel. Schultz v. Indus. Comm.*, 96 Ohio St.3d 27, 2002-Ohio-3316, ¶ 61, citing *Stephenson* at 170. *See* Ohio Adm.Code 4121-3-34(B)(1).

{¶ 28} R.C. 4123.58 governs compensation for PTD, allowing compensation only when one of the following conditions is met:

> (1) The claimant has lost, or lost the use of both hands or both arms, or both feet or both legs, or both eyes, or of any two thereof; however, the loss or loss of use of one limb does not constitute the loss or loss of use of two body parts;

> (2) The impairment resulting from the employee's injury or occupational disease prevents the employee from engaging in sustained remunerative employment utilizing the employment skills that the employee has or may reasonably be expected to develop.

R.C. 4123.58(C). PTD compensation is prohibited when the reason the applicant is unable to engage in sustained remunerative employment is due to any of the following reasons, whether individually or in combination:

> (1) Impairments of the employee that are not the result of an allowed injury or occupational disease;

> (2) Solely the employee's age or aging;

> (3) The employee retired or otherwise is not working for reasons unrelated to the allowed injury or occupational disease.

(4) The employee has not engaged in educational or rehabilitative efforts to enhance the employee's employability, unless such efforts are determined to be in vain.

R.C. 4123.58(D).

{¶ 29} Ohio Adm.Code 4121-3-34 governs the processing and adjudication of applications for PTD.[2] Ohio Adm.Code 4121-3-34(B)(2) provides a classification of physical demands of work, separating the demands into five classes: sedentary work, light work, medium work, heavy work, and very heavy work. "Sedentary work" is defined as:

> [E]xerting up to ten pounds of force occasionally (occasionally: activity or condition exists up to one-third of the time) and/or a negligible amount of force frequently (frequently: activity or condition exists from one-third to two-thirds of the time) to lift, carry, push, pull, or otherwise move objects. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met.

Ohio Adm.Code 4121-3-34(B)(2)(a). The applicant bears the burden to prove permanent total disability by establishing under a preponderance of the evidence that the disability is permanent and that the inability to work is causally related to the allowed conditions. Ohio Adm.Code 4121-3-34(D)(3)(a). *See State ex rel. Sheppard v. Indus. Comm.*, 139 Ohio St.3d 223, 2014-Ohio-1904, ¶ 16; *State ex rel. LTV Steel Co. v. Indus. Comm.*, 65 Ohio St.3d 22, 23 (1992).

{¶ 30} The relevant inquiry in PTD cases is whether the applicant engages in or is medically capable of sustained remunerative employment. *Seibert*, 2019-Ohio-3341, ¶ 18, citing *State ex rel. Lawson v. Mondie Forge*, 104 Ohio St.3d 39, 2004-Ohio-6086, ¶ 16; *State ex rel. Franta v. Indus. Comm. of Ohio*, 10th Dist. No. 19AP-530, 2021-Ohio-1501, ¶ 6. The term "sustained" has not been precisely defined for workers' compensation purposes. In order to be considered sustained, remunerative activity does not have to occur on a regular or daily basis, but "[a]ny 'ongoing pattern' of activity can be categorized as sustained activity." *State ex rel. McNea v. Indus. Comm.*, 131 Ohio St.3d 408, 2012-Ohio-1296, ¶ 13, quoting *Schultz*, 2002-Ohio-3316, at ¶ 63. The Supreme Court of Ohio has held that "part-time work constitutes sustained remunerative employment." *State ex rel. Toth*

---

[2] Ohio Adm.Code 4121-3-34 has been amended since relator filed her application for PTD. However, the changes are not material to the question presented in this case.

*v. Indus. Comm.*, 80 Ohio St.3d 360, 362 (1997). Importantly, however, there is no bright-line numerical analysis for determining whether part-time work meets the qualifications for sustained remunerative employment in PTD cases. *State ex rel. Bonnlander v. Hamon*, 150 Ohio St.3d 567, 2017-Ohio-4003, ¶ 20 (stating that "there is no hourly standard for determining one's capability to perform sustained remunerative employment on a part-time basis," but rather the "commission decides whether a claimant is capable of sustained remunerative employment on a case-by-case basis").

{¶ 31} "Entitlement to permanent total disability compensation requires a showing that the medical impairment due to the allowed conditions, either alone or together with nonmedical disability factors, prevents claimant from engaging in sustained remunerative employment." *State ex rel. Waddle v. Indus. Comm.*, 67 Ohio St.3d 452, 455 (1993), quoting *LTV Steel Co.,* 65 Ohio St.3d 22, 24 (1992). Nonmedical factors include the "claimant's age, education, work record, and all other factors, such as physical, psychological, and sociological, that are contained within the record." *Stephenson* at 173. "[A] claimant's medical capacity to work is not dispositive if the claimant's age, experience, education, etc., foreclose the claimant's employability." *State ex rel. Gay v. Mihm*, 68 Ohio St.3d 315, 321 (1994). *See State ex rel. Navistar, Inc. v. Indus. Comm.*, 160 Ohio St.3d 7, 2020-Ohio-712, ¶ 23, quoting *State ex rel. Galion Mfg. Div., Dresser Indus., Inc. v. Haygood*, 60 Ohio St.3d 38, 40 (1991) ("While the commission may not *deny* PTD compensation without considering nonmedical factors, it may *grant* PTD compensation without considering nonmedical factors when 'medical factors alone preclude sustained remunerative employment.'" (Emphasis sic.)). Furthermore, the commission is required to "specifically state what evidence has been relied upon, and briefly explain the reasoning for its decision." *State ex rel. Noll v. Indus. Comm.*, 57 Ohio St.3d 203 (1991), paragraph one of the syllabus.

## C. Application

{¶ 32} Relator argues the commission erred in denying her application for PTD compensation because she is not capable of sedentary work under Ohio Adm.Code 4121-3-34(B)(2)(a) and this court's decisions in *State ex rel. Kidd v. Indus. Comm. of Ohio*, 10th Dist. No. 20AP-364, 2022-Ohio-450, and *State ex rel. Libecap v. Indus. Comm.*, 10th Dist. No. 96AP-29, 1996 Ohio App. LEXIS 3892 (Sept. 5, 1996), *aff'd without opinion*, 83 Ohio St.3d 178 (1998). Sedentary work under the Ohio Administrative Code "involves sitting most of the time," although it may also "involve walking or standing for brief periods of

time." Ohio Adm.Code 4121-3-34(B)(2)(a). Furthermore, a job is "sedentary if walking and standing are required *only occasionally* and all other sedentary criteria are met." (Emphasis added.) Ohio Adm.Code 4121-3-34(B)(2)(a).

{¶ 33} This court has restated the salient principle articulated in *Libecap*, explaining that " 'where a physician places the claimant generally in the sedentary category but has set forth functional capacities so limited that no sedentary work is really feasible (such as an inability to sit for more than 30 minutes), then the commission does not have discretion to conclude based on that report that the claimant can perform sustained remunerative work of a sedentary nature.' " *Kidd* at ¶ 9, quoting *State ex rel. Owens Corning Fiberglass v. Indus. Comm.*, 10th Dist. No. 03AP-684, 2004-Ohio-3841, ¶ 56. *See State ex rel. Howard v. Millennium Inorganic Chems.*, 10th Dist. No. 03AP-637, 2004-Ohio-6603, ¶ 10, quoting *State ex rel. Clevite Elastomers v. Torok*, 10th Dist. No. 02AP-116, 2002-Ohio-4770, ¶ 14 (" 'Functional abilities may be so limited that only brief periods of work activities would be possible, which would not constitute sustained remunerative employment. * * * [That is,] regardless of the fact that the physician placed claimant in the "sedentary" category, the specific restrictions [may be] so narrow as to preclude sustained remunerative employment.' "). The court's analysis in *Libecap* has been further summarized as follows:

> "In *Libecap*, the problem was not that the doctor's report was defective because claimant was placed in the sedentary category. Doctors may be unaware of legal criteria and the doctor in that case had set forth clear and unambiguous functional restrictions in his discussion that would permit short periods of sedentary activity. Rather, the problem was with the commission's finding of capacity for sedentary, sustained remunerative employment based on a report that, read in its entirety, clearly precluded sustained remunerative employment of a sedentary nature.
>
> Conversely, where a physician's checklist states that the claimant is medically precluded from performing any sustained remunerative employment but where the narrative report, read in its entirety, clearly and unambiguously sets forth a capacity for sustained remunerative employment, then the commission lacks discretion to rely on that report for a finding of medical inability to perform any sustained remunerative employment."

*Howard* at ¶ 9, quoting *Owens Corning* at ¶ 56-57. Thus, the " 'commission cannot simply rely on a physician's "bottom line" identification of an exertional category but must base

its decision on the specific restrictions imposed by the physician in the body of the report.' " *Howard* at ¶ 9, quoting *Owens Corning* at ¶ 56.

{¶ 34} In *Libecap* and the cases applying its holding, this court closely examined the medical report relied upon by the commission in determining whether there existed an apparent inconsistency between the medical restrictions contained in the report and the concept of the ability to maintain sustained remunerative employment. Given the inherently factual nature of this inquiry, an examination of the particular circumstances of those cases in which an apparent inconsistency was found may be helpful to the determination of whether such an apparent inconsistency is present in this case. In *Libecap*, the commission denied the applicant's PTD compensation application based on a doctor's report that provided limitations on the applicant's ability to work including an inability to lift more than 5 or 10 pounds and difficulty in any occupation that would involve sitting or standing for more than 30 minutes. The doctor further stated that " '[f]requent breaks and allowing the claimant to change positions would be required.' " *Libecap*. The commission denied the applicant's PTD compensation application based on the doctor's report and the report of a psychologist that provided insight regarding the applicant's psychological profile. This court found the commission abused its discretion because the commission relied on reports that did not constitute some evidence. The court found the doctor's report relied on by the commission was not "consistent with sedentary work as defined in the Ohio Administrative Code or with the general definition of 'sedentary work' utilized before Ohio Adm.Code 4121-3-34(B)(2)(a) became effective." *Id*.

{¶ 35} In *Howard*, the commission denied a PTD application on the basis of a medical report concluding that the applicant was capable of performing sedentary work. The commission argued *Libecap* did not apply because the medical report identified no restrictions that were inconsistent or incompatible with sedentary work. The court found the medical limitations set forth in the medical report seemed inconsistent with the possibility of the applicant maintaining sustained remunerative employment. The court noted the report's finding that the applicant was unable to maintain a voice loud enough to be heard over normal conversation and background noise, thereby making it very difficult to communicate with fellow workers. The applicant's voice tired rapidly and tended to become inaudible after a few seconds to minutes. Furthermore, the applicant's shortness of breath was aggravated by performance of any unusual activities of daily living beyond

personal cleansing or grooming. Finally, the court noted the PTD claimant had "suffered a nearly 100 percent whole person impairment as a result of the allowed conditions in his claim." *Howard*, 2004-Ohio-6603, at ¶ 12. The court acknowledged that there existed room for interpretation of the medical evidence and granted a limited writ of mandamus so the commission could "adequately resolv[e] the apparent inconsistency between the medical restrictions contained in [the medical] report and the concept of the ability to maintain sustained remunerative employment." *Id.* at ¶ 12.

{¶ 36} Recently, in *Kidd*, this court applied *Libecap*, in considering a commission order denying PTD based on the report of an independent medical examiner, who found that the applicant could work at a sedentary level. The report contained functional limitations including being able to stand for 20 minutes, sit for 20 to 30 minutes with change in position, and walk half of a mile. The medical report further provided the applicant should be allowed rest periods every 15 to 20 minutes for 1 to 2 minutes as needed during standing, sitting, or walking. The commission argued that *Libecap* was distinguishable because, in addition to being able to use a treadmill four times a week for approximately 30 minutes, the applicant could sit, stand, and walk. The commission also argued that the applicant's rest-period requirement was not an impediment to sedentary work because she could change position or stand and walk as necessary.

{¶ 37} This court rejected the commission's arguments in *Kidd*, finding that, as in *Libecap*, "the inability to sit for more than 30 minutes is inconsistent with sedentary work as defined in the Ohio Administrative Code." *Kidd*, 2022-Ohio-450, at ¶ 10. The court further found that the rest-period requirement indicated that the applicant "needs to stop working for one or two minutes every 15 to 20 minutes, not that she simply change positions, stand, or walk after sitting for a spell." *Id.* Therefore, the court found the applicant's "inability to sit for more than 30 minutes, and her need to take a one-or two-minute rest period every 15 to 20 minutes, is akin to the limitations this court found in *Libecap* to be seemingly inconsistent with sedentary work, as the Ohio Administrative Code defines that term." *Id.*

{¶ 38} Here, the SHO relied on the report of Dr. Gade-Pulido in finding relator was capable of sedentary work. Opining on relator's residual functional capacity, Dr. Gade-Pulido found that relator's condition "precludes her ability to maintain prolonged static positioning as well as her ability to walk or stand for more than 30 minutes." (R. at 48.) Dr.

Gade-Pulido stated that relator is "capable of a sedentary level of work; however, she would need to be allowed to change position every 20 minutes." (R. at 48.) In the commission physical strength rating form, Dr. Gade-Pulido reiterated this limitation, noting that "[s]he should be allowed to change position every 20 minutes" after finding that relator is capable of sedentary work. (R. at 49.)

{¶ 39} Relator argues that Dr. Pulido's limitation requiring that relator be allowed to change position every 20 minutes means that relator "cannot sit for more than 20 minutes." (Relator's Brief at 11.) Based on this, relator argues that this court's holdings in *Libecap* and *Kidd* apply because relator's functional capacity is so limited that no sedentary work is feasible. In its brief, the commission argues this court's holding in *Libecap* and subsequent cases applying its holding do not apply because Dr. Gade-Pulido's report does not identify a "specific time restriction on sitting" and, as a result, argues that relator is "capable of sitting most of the time." (Comm. Brief at 11.) The commission argues in this action that Dr. Gade-Pulido's report placed a specific time limitation only on relator's ability to walk or stand for more than 30 minutes.

{¶ 40} Although Dr. Gade-Pulido does not specifically mention the term "sitting" in her summary of relator's residual functional capacity, a sitting position is encapsulated by Dr. Gade-Pulido's reference to a "static position." Merriam-Webster's Collegiate Dictionary defines "static" as "exerting force by reason of weight alone without motion"; "of or relating to bodies at rest or forces in equilibrium"; "showing little change"; "characterized by a lack of movement, animation, or progression"; "producing an effect of repose or quiescence"; or "standing or fixed in one place." *Merriam-Webster's Collegiate Dictionary* 1219 (11th Ed.2014). Similarly, Taber's Cyclopedic Medical Dictionary defines "static" as "[a]t rest; in equilibrium; not in motion." *Taber's Cyclopedic Medical Dictionary* 2226 (23d Ed.2017). Although perhaps overly elementary, "sit" is defined in part as "to rest on the buttocks or haunches." *Merriam-Webster's* at 1165. Thus, although Dr. Gade-Pulido does not specifically mention the term "sitting," the phrase static position includes any nonmoving position, which thereby necessarily includes, but is not limited to, sitting. However, Dr. Gade-Pulido does not place a specific time limitation on relator's ability to maintain a static position, stating only that relator was unable to maintain such a state in a prolonged fashion. No party argues that Dr. Gade-Pulido's 30-minute limitation also applies the

phrase "prolonged static position." Instead, such temporal limitation appears to only apply to walking or standing.[3]

{¶ 41} Contrary to relator's contentions, the limitation in Dr. Gade-Pulido's report requiring relator be allowed to change position every 20 minutes does not encompass a specific temporal limitation on relator's ability to sit. Dr. Gade-Pulido does not state that relator's condition precludes her ability to sit for more than a specific amount of time. Rather, the limitation requires an employer *allow* relator to change position every 20 minutes. Relator contends that this interpretation is inconsistent with the rest of Dr. Gade-Pulido's observation that relator "changed position frequently throughout the interview noting pain in her low back predominantly while seated." (R. at 44.) Dr. Gade-Pulido's observations of relator's behavior and complaints, however, do not lead to a conclusion that Dr. Gade-Pulido found relator was unable to sit for a specific amount of time, let alone 20 minutes. *See State ex rel. Stallard Bales v. Indus. Comm.*, 10th Dist. No. 15AP-418, 2017-Ohio-947, ¶ 47 (stating that "[c]ontrary to relator's assertions, Dr. Elias never limited her to 30 minutes of continuous sitting and 20 minutes of continuous standing" but rather, "Dr. Elias noted that relator 'self-reported' these restrictions," and therefore finding that the report in question "does not even contain a *Libecap*-type contradiction"). Dr. Gade-Pulido's 30-minute limitation on relator's ability to walk or stand is demonstrative of the manner in which a specific temporal limitation could be imposed. By contrast, it is clear that Dr. Gade-Pulido made no such temporal limitation on relator's ability to sit in her report.

{¶ 42} Unlike in *Kidd*, in which the court found the applicant's limitations were severe enough to mean that the applicant would need to "stop working for one to two minutes every 15 to 20 minutes, not that she *simply change positions*, stand, or walk after sitting for a spell," here, relator points only to the allowance for a change of position every 20 minutes in support of her argument that she is incapable of sustained remunerative employment of a sedentary nature. (Emphasis added.) *Kidd*, 2022-Ohio-450, at ¶ 10. Moreover, unlike in *Howard*, in which the PTD claimant suffered a nearly 100 percent

---

[3] Although marginally unclear, an alternative interpretation applying this specific temporal limitation to the phrase "static position" would not be consistent with the overall text of the sentence, including the usage of "prolonged" as a temporal modifier of the phrase "static position," or with common rules of grammar and construction, notably including the last-antecedent rule. *See Indep. Ins. Agents of Ohio v. Fabe*, 63 Ohio St.3d 310, 314 (1992), quoting *Carter v. Div. of Water*, 146 Ohio St. 203, 209 (1946) (" 'Referential and qualifying words and phrases, where no contrary intention appears, refer solely to the last antecedent.' "); *Gahanna v. Ohio Mun. Joint Self-Insurance*, 10th Dist. No. 20AP-265, 2021-Ohio-445, ¶ 20.

whole person impairment, Dr. Gade-Pulido found relator had sustained a 48 percent whole person impairment. Considering the entire report and the specific limitations contained therein, the report does not set forth functional capacities so limited that no sedentary work is really feasible.

{¶ 43} Therefore, considering the entire medical report, the magistrate finds there is not a clear or apparent inconsistency between the medical limitations contained in the report relied upon by the commission in denying PTD compensation, including the limitation allowing relator to change position every 20 minutes, and the concept of the ability to maintain sustained remunerative employment. Because the report relied upon by the commission does not give rise this apparent inconsistency, it constitutes some evidence on which the commission could rely in determining relator failed to meet her burden of demonstrating entitlement to PTD compensation. *See Stallard Bales* at ¶ 47.

{¶ 44} Finally, the employer notes that under R.C. 4123.58(D), PTD compensation shall not be awarded where the reason the applicant is unable to engage in sustained remunerative employment is due to any one of several listed reasons. The employer argues that several of the reasons provided under R.C. 4123.58(D) apply in this case, thereby barring relator from receiving PTD compensation. As the commission has not made any findings, including in the SHO order denying relator's application for PTD compensation, regarding the applicability of the reasons listed under R.C. 4123.58(D), it is not necessary to address the employer's argument in the first instance in this mandamus action. *See State ex rel. Hayes Lemmerz Internatl. Commer. Hwy. v. Indus. Comm. of Ohio*, 10th Dist. No. 09AP-908, 2011-Ohio-2161, ¶ 19 ("The commission should be given an opportunity to consider legal and factual issues in the first instance and decide them, rather than having such issues determined in the first instance by this court in a mandamus action, which is essentially contrary to the purposes of mandamus as defined above."). *See also Bonnlander*, 2017-Ohio-4003 at ¶ 15 (finding resolution of a reason under R.C. 4123.59(D) entailed a question of fact that was for the commission to determine).

**D. Conclusion**

{¶ 45} Based on the foregoing, relator has not demonstrated a clear legal right to the requested relief or that the commission is under a clear legal duty to provide such relief. Accordingly, it is the decision and recommendation of the magistrate that relator's request for a writ of mandamus should be denied. As relator filed on March 24, 2022 a notice

pursuant to Civ.R. 41(A)(1)(a) dismissing all claims against the BWC in this action, the commission's March 17, 2022 motion to dismiss the BWC is moot.

/S/ MAGISTRATE
JOSEPH E. WENGER IV

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b). A party may file written objections to the magistrate's decision within fourteen days of the filing of the decision.